THE PEOPLE *ex rel.* City of Chicago

*v.*

THE CHICAGO TELEPHONE COMPANY.

*Opinion filed February 15, 1906—Rehearing denied April 4, 1906.*

1. QUO WARRANTO—*right to hold or exercise license granted by ordinance may be questioned by quo warranto.* The license or privilege of a telephone company to occupy the streets of a city may be questioned by an information in the nature of *quo warranto* upon the ground that it has been granted improperly or without warrant of law, or that it is so held and exercised.

2. ORDINANCES—*ordinances extend over annexed territory immediately upon annexation.* Upon the annexation of territory to a city, ordinances of the city then existing extend immediately over the annexed territory.

3. TELEPHONES—*when telephone ordinance will apply in territory subsequently annexed to city.* An ordinance granting telephone privileges to a corporation upon certain conditions and containing certain limitations, there being no provision restricting the operation of the ordinance to the then existing limits of the city, applies to all territory of the city during the period of the grant, including territory subsequently annexed.

4. SAME—*when limitation as to telephone rates is binding.* An ordinance granting telephone privileges to a corporation upon the limitation that the company shall not increase its then established rates to subscribers within the city does not entitle the company to charge greater rates in subsequently annexed territory, even though it had established such rates, before annexation, in the municipal corporations annexed, under ordinances granting it the right to occupy the streets of such municipal corporations, without any limitation as to time or rates but not for any definite period extending beyond the time the municipal corporations, as the result of annexation, ceased to exist.

5. SAME—*limitations of an ordinance apply to improved service.* An ordinance granting telephone privileges to a corporation with the limitation that it shall not increase to its present or future subscribers the rates for telephone service then established, does not, as between the city and the company, authorize the company to charge greater rates for an improved service, since, if the improved service is not within contemplation of the limitation, it is not within contemplation of the grant and the company would be without authority to adopt it.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

JOHN J. HEALY, State's Attorney, (MACLAY HOYNE, and JAMES HAMILTON LEWIS, Corporation Counsel, of counsel,) for appellant:

The restriction in section 6 of the ordinance of the city of Chicago passed January 4, 1889, forbidding the Chicago Telephone Company to "increase to its present or future subscribers the rates for telephone service now established," should be interpreted as applying to "its present or future subscribers within the limits of the city" as the said limits then existed and as they might thereafter exist from time to time. That is to say, that while the words "within the city," which are previously used in this section, are to be supplied here to qualify this restriction, they must be taken in the same sense in which they were apparently used before. The words are unambiguous. *Railroad Co.* v. *Hoffman,* 161 Ind. 601; *Railroad Co.* v. *Chicago,* 176 U. S. 646; *People* v. *Deehan,* 153 N. Y. 531; *Moore* v. *St. Paul,* 85 N. W. Rep. 163; *Gaslight Co.* v. *St. Louis,* 46 Mo. 121; *Traction Co.* v. *Chicago,* 199 Ill. 546; *Railroad Co.* v. *State,* 45 Md. 596; *Transportation Co.* v. *Briggs,* 22 N. J. L. 623; *Des-Moines* v. *Railroad Co.* 41 Iowa, 569.

The words "telephone" and "service" are both general words. The word "telephone," therefore, given its natural meaning, should be taken as including the telephone with all improvements, equipments and appliances essential in its operation to make it most effective in use. The word "service" includes all kinds of service. *Simons Sons Co.* v. *Telephone Co.* 63 L. R. A. 727; *Hockett* v. *State,* 105 Ind. 250; *Telegraph Co.* v. *Bradbury,* 106 id. 1; *Telegraph Co.* v. *Fehring,* 146 id. 189.

The words "telephone service," in section 6 of the said ordinance, being general words and because of the connection in which they are used, are to be understood as includ-

ing all kinds of telephone service, whether then invented and in operation or not, and as including everything connected with such kinds of service. The words "now established" qualify the word "rates" and not the words "telephone service." But were it otherwise, the result would be the same under the rules of interpretation already set forth. *Gaslight Co.* v. *Decatur,* 120 Ill. 67; *State* v. *Railroad Co.* 29 Fla. 590; *Kalamazoo* v. *Telephone Co.* 85 N. W. Rep. 1067.

A common carrier using the streets of a city for the transaction of its business is confined to the method of fixing rates prescribed by the ordinance authorizing such use. *Bancroft* v. *Wall,* 6 Ohio, 22; *Johnson* v. *State,* 113 Ind. 143; *Hockett* v. *State,* 105 id. 250; *Rice* v. *Railway Co.* 122 Mich. 677.

A telephone company or other public service corporation transacting its business under a statute or ordinance fixing its maximum charges, tolls, freights or fares, is bound not to exceed the prescribed compensation. *People* v. *Railroad Co.* 178 Ill. 594; *Kissane* v. *Railway Co.* 79 N. W. Rep. 1104; *Mahan* v. *Telephone Co.* 93 id. 629; *Noblesville* v. *Gas Co.* 157 Ind. 162.

When the limits of a city are extended by the annexation of additional territory, its ordinances *ipso facto* come into force in the annexed territory and supersede the municipal regulations previously in force therein. *Railroad Co.* v. *Chicago,* 176 U. S. 646; *Gaslight Co.* v. *St. Louis,* 46 Mo. 121; *Snell* v. *Chicago,* 133 Ill. 413; *People* v. *Harrison,* 191 id. 257; *Railway Co.* v. *Chicago,* 143 id. 641; *McGurn* v. *Board of Education,* 133 id. 122; *Cicero* v. *Chicago,* 182 id. 301; *Swift* v. *Kline,* 163 id. 264; *Bishop* v. *People,* 200 id. 33.

Where a telephone company accepts an ordinance granting it the right to use the streets of a city for its poles and wires in consideration of an annual payment of a certain sum of money or upon other conditions beneficial to the public, it cannot thereafter contest the reasonableness of the sum

charged or the conditions fixed. It is estopped. *Telegraph Co.* v. *City,* 76 S. W. Rep. 159; *People v. Railroad Co.* 178 Ill. 594.

HOLT, WHEELER & SIDLEY, (JOHN J. HERRICK, of counsel,) for appellee:

*Quo warranto* is not the proper remedy. The act of 1874, "to revise the law in relation to *quo warranto,*" is the exclusive source of authority on that subject, superseding both the common law and prior statutes. *Canal Comrs.* v. *East Peoria,* 179 Ill. 214; *Culver* v. *Bank,* 64 id. 528; *People* v. *Thornton,* 186 id. 162; 26 Am. & Eng. Ency. of Law, 733, and cases cited.

*Quo warranto* will not lie except in case of necessity, and never when there is another adequate remedy, either at law or in equity. High on Ex. Legal Rem. sec. 617; *People* v. *Whitcomb,* 55 Ill. 172; *People* v. *Springfield,* 61 Ill. App. 86; *People* v. *Cooper,* 139 Ill. 461.

Before annexation the telephone company was operating in the annexed territory under valid ordinances from the corporate authorities in such territory, charging local rates far below the Chicago rate and a reasonable rate of toll for communication with Chicago. The continued validity of these ordinances after annexation, and the lack of authority to operate in the annexed territory under the Chicago ordinance, was formally pronounced by the Chicago authorities upon annexation, and has been continuously recognized and acted upon by both parties down to the present time, permits to construct in annexed territory being uniformly refused under the Chicago ordinance and granted under the previous village ordinances. Each of the village ordinances accepted and acted upon by the telephone company was a contract not revocable at the will of the village. *Railway Co.* v. *People,* 73 Ill. 541; *Quincy* v. *Bull,* 106 id. 337; *Gaslight Co.* v. *Lake,* 130 id. 42; *Belleville* v. *Railway Co.* 152 id. 171; *Chicago* v. *Stock Yards Co.* 164 id. 224; *Harvey* v. *Rail-*

220—16

*way Co.* 186 id. 283; *People* v. *Telephone Co.* 192 id. 307; *Telephone Co.* v. *Telephone Co.* 199 id. 324; *McWethy* v. *Electric Light Co.* 202 id. 218; *People* v. *Blocki,* 203 id. 363; *Winnetka* v. *Railway Co.* 204 id. 297.

To hold that a grant of street rights intended to be the basis of financial investment is terminable at the will of the granting body would be a disastrous construction, not to be resorted to unless unmistakably expressed. *New York* v. *Mayor,* 3 Duer, 149; *People* v. *O'Brien,* 111 N. Y. 36; *New Orleans* v. *Telephone Co.* 40 La. Ann. 41; *Mayor* v. *Railway Co.* 83 Tex. 548; *Telephone Co.* v. *Jersey City,* 49 N. J. L. 303.

These contracts were not void for want of mutuality. The same objection would have applied with equal force to all the cases above cited where contracts were held valid and enforceable. Not only do they recite a consideration, but acceptance and construction upon the faith of them was such performance as to furnish necessary mutuality. Acceptance created an obligation to perform reasonable service, and this obligation might be enforced by *mandamus.* *Railway Co.* v. *Railway Co.* 73 Iowa, 524; *People* v. *Deehan,* 153 N. Y. 528; *Railway Co.* v. *People,* 120 Ill. 200; *People* v. *Railway Co.* 178 id. 541.

The village ordinances and the rights acquired thereunder were not abrogated or superseded by the Chicago ordinance upon the annexation of the villages to the city of Chicago. If revocable, they could only have been revoked by an act of equal dignity with that which created them, viz., an ordinance. *Hibbard* v. *Chicago,* 173 Ill. 97; *Railroad Co.* v. *Chicago,* 174 id. 439; *Galt* v. *Chicago,* id. 605; *Altamont* v. *Railway Co.* 184 id. 47; *People* v. *Mount,* 186 id. 560; *Paxton* v. *Bogardus,* 20 id. 640; *People* v. *Latham,* 203 id. 9; *Hope* v. *Alton,* 214 id. 102.

Annexation did not result in the death of the annexed municipalities in the sense in which the death of a licensor revokes a license to enter upon his land.

The city stands in the shoes of the annexed municipalities. *Gaslight Co.* v. *Lake,* 130 Ill. 42; *Chicago* v. *Stock Yards Co.* 164 id. 224; *Chicago* v. *Blocki,* 203 id. 363; *Railway Co.* v. *Chicago,* 143 id. 641.

The Annexation act was passed after the date of nearly all of these ordinances. If it is held that annexation *ipso facto* annuls, revokes or supersedes the ordinances, the contract obligation of the ordinances is impaired by the subsequent legislative act. *Northwestern University* v. *People,* 99 U. S. 309; *Bank* v. *Knoop,* 16 How. 369; *Home for Friendless* v. *Rouse,* 8 Wall. 430; *Railroad Co.* v. *Reid,* 13 id. 266; *Humphrey* v. *Pegus,* 16 id. 244; *Railway Co.* v. *Maguire,* 20 id. 36; *Asylum* v. *New Orleans,* 108 U. S. 362.

The Chicago ordinance of 1889 provides that the telephone company "shall not increase to its present or future subscribers the rates for telephone service now established." A public service corporation may lawfully contract for special rates or terms in respect to service which it is not required by law to render. *Blank* v. *Railroad Co.* 182 Ill. 332; *Railroad Co.* v. *Hamler,* 215 id. 525; *Railway Co.* v. *Voigt,* 176 U. S. 498.

The ordinance does not cover the special contracts. *Telephone Co.* v. *Manning,* 186 U. S. 238; *Gardner* v. *Telephone Co.* 49 Atl. Rep. 1004.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

By leave of the circuit court of Cook county an information in the nature of a *quo warranto* was filed in this case in the name of the People of the State of Illinois, upon the relation of the city of Chicago, against the Chicago Telephone Company, with the double object of declaring a forfeiture of the franchise of said company and also a forfeiture of the right to exercise said franchise in the public streets of the city of Chicago under an ordinance of said city passed January 4, 1889. The information charged the defendant

with having misused and abused its franchise by demanding and receiving unlawful rates for telephone service and otherwise, and with having unlawfully executed and misused the license and privilege of maintaining and operating telephone lines in the streets of said city and exercising its rights therein. The defendant filed a special plea setting up the facts from which it claimed the right to continue in the exercise of said franchise, license and privilege, and to that plea a general demurrer was filed. The demurrer being overruled, the People elected to stand by it, and the information was dismissed and judgment was rendered against the relator for costs. The case is brought to this court by appeal.

Counsel for appellee open their argument by insisting that *quo warranto* is not a proper remedy for the alleged wrongs complained of in the information, and that we must affirm the judgment on that ground. That question was not raised in the circuit court by motion to set aside the leave granted for filing the information, or in any other manner. On the contrary, the abstract of the record shows that the rule upon the defendant to plead to the information was based on an agreement of its counsel, and in pursuance of that rule a plea to the merits was filed. The only errors are assigned by appellant, but as the question may arise in the future progress of the cause, we will say that the remedy invoked is the proper one.

One of the objects of the proceeding is to forfeit the franchise of the corporation, and it seems that no one should deny the propriety of the proceeding for that purpose. So far as the information questions the right of the defendant to continue in the occupation and use of the streets held by the city of Chicago in trust for the general public, and to exercise its franchise therein, the proceeding involves a matter of public right, as to which the people have no other legal remedy. The license or privilege to occupy the streets is not a franchise, but it can only be granted in pursuance of legislative authority, and the right to hold or exercise the

license or privilege may be questioned by an information in the nature of a *quo warranto* on the ground that it has been granted improperly or without warrant of law, or that it is so held or exercised. *Swarth* v. *People,* 109 Ill. 621 ; *Martens* v. *People,* 186 id. 314.

The information and plea cover one hundred and fifty-nine printed pages of abstract, and it is impracticable to state their contents in detail. A brief statement of the leading facts as alleged in the information and admitted or not denied by the plea, and as set up in the plea, will afford an understanding of the questions involved and make our views clear on the question whether the demurrer was properly sustained.

The defendant is a corporation formed to do a general telephone, telegraph and district telegraph business. The capital stock, which was originally $500,000, has been increased to $20,000,000. An ordinance of the city of Chicago was passed on January 4, 1889, and accepted by the defendant on January 10, 1889, which granted permission to the defendant to construct, maintain, repair and operate in the public streets, alleys and public ways of the city of Chicago, for the period of twenty years, its lines of wires by means of underground conduits in part of the city and by means of poles and wires in the streets and alleys and over public grounds in the other portions of the city. The grant was upon certain conditions, among which were the following: The defendant was required to file with the comptroller of the city, on the first days of January and July of each year, a sworn statement of its gross receipts from the telephone business done by it within the city of Chicago for the six months next preceding and to pay into the city treasury three per cent on such gross receipts. It was also required to file with its acceptance of the ordinance a schedule "showing the rates charged by said company for telephone service at the date of the passage of this ordinance within the limits of the city of Chicago," and was prohib-

ited from increasing to its present or ·future subscribers the rates for telephone service then established. The defendant accepted the ordinance with its terms and conditions and filed with its acceptance a schedule of the rates then charged for telephone service within the limits of said city. After-. ward other territory was annexed to and brought within the limits of the city of Chicago which had previously been within the limits and under the jurisdiction of other minor municipalities organized as towns or villages, which, upon such annexation, ceased to exist. Those towns or villages had previously granted to the defendant the right to occupy and use the streets therein for its telephone business upon certain conditions contained in the ordinances granting such privileges, but without any limit of time or condition as to rates. As to those streets and grants the defendant claimed that it had acquired vested contract rights which were not and could not be affected by ordinances of the city of Chicago, and that as to the territory so annexed the limitation of the ordinance as to rates did not apply. One of the principal matters in controversy therefore is whether the defendant had a right to continue to charge such rates as it saw fit in such portions of the city as were not within the city limits when the ordinance was passed.

Another question arises out of the improvements in telephone service and the equipment and appliances therefor that have been effected since the ordinance was passed. Since January 4, 1889, when the privilege of using the streets for telephone business was granted, great improvements have been made in the means and appliances for conducting the business, one of the most important of which is the substitution of a metallic circuit for the grounded circuit which was in use at that time. The grounded circuit, and the outfit or appliances connected with it, were not satisfactory and successful, particularly in the operation of long distance telephones, and a method was devised for furnishing a combined local and long distance telephone service with a single

set of instruments, and this was an improved service both for local and long distance business.   The defendant presented to its patrons within the city of Chicago propositions to enter into what they called "special service contracts," by which patrons were to have the improved service at higher rates than were charged when the ordinance was passed. This scheme of presenting to the patrons an option to retain the antiquated service at the ordinance rate or to have a better and more satisfactory service at a higher rate has resulted in the substitution of the better service as to a very large majority of all the patrons of the defendant in the city. Although the improved service is in quite general use, and from the averments of the plea is evidently the form of service furnished by telephone companies keeping up with the improvements in that business, it is still called by the defendant a special service furnished under a special service contract.   The claim of the defendant as to these improvements in the service is, that the proper construction of the ordinance only requires it to furnish the same style of service and equipment that was furnished when the ordinance was passed at the rate then fixed, and that it can charge a higher and different rate for better telephone service if the patrons agree to the special service contract.

The limitation that the defendant should not increase to its present or future subscribers within the city of Chicago the rates for telephone service then established had no provision restricting it to the existing limits of the city.   The words of the ordinance are clear and not ambiguous, and apply to all the territory within the city of Chicago during the period of the grant.   The ordinance having been accepted by the defendant became a contract by which both parties were bound, and the territory which has since been annexed to the city is within the city of Chicago.   If there had been an intention to restrict the limitations to the existing city limits, such an intention would naturally have been expressed in the ordinance or the acceptance.   Where the words are

not doubtful, the courts have no right to annex terms or conditions not agreed to by the parties. The ground of defendant's claim that the ordinance does not limit its charges in the annexed territory is, that before the annexation the minor municipalities had granted to it the right to occupy the streets therein for its business without any limit as to time. If the grants had been for terms of years under legislative authority authorizing them, and the terms had extended beyond the existence of the corporations granting the privileges, there might be ground for saying that the grants were binding upon the city because they had become binding contracts under which the defendant had vested contract rights for such terms. But they were not for definite periods, and the grants were in consideration of furnishing something to the town or village, such as telephone service to the town or village hall or the village authorities free or for some reduced rate. Such grants cannot be construed to be perpetual and at most cannot extend beyond the lives of the corporations granting them. Upon annexation there ceased to be any town or village authorities entitled to the benefits of the contract or authorized to demand or receive them, and it could not have been understood that the grant should continue discharged of the obligation annexed to it. But if it were otherwise, and the defendant has the right to maintain its wires and occupy the streets where the towns and villages formerly existed, we do not see how it can be said that it has a right to occupy the streets of the city as they existed when the ordinance was passed, in violation of the conditions of that ordinance. We do not think the defendant can be heard to say it will retain streets which it concedes it has no right to occupy except under the ordinance, and will not comply with the conditions of the ordinance. If the rates for telephone service are increased within the city it is a violation of the contract; and it seems to be no answer to a charge of such violation for the defendant to say that it has a right, derived from the towns and villages,

to violate the agreement. The ordinances of the city extended over the annexed territory immediately upon annexation, (*Illinois Central Railroad Co.* v. *City of Chicago,* 176 U. S. 646,) and the limitations of the ordinance applied to the annexed territory. The question in this case is the same as the one involved in the case of *Indiana Railway Co.* v. *Hoffman,* 160 Ind. 601, (69 N. E. Rep. 399,) where it was held that a provision for transfers applied to the territory annexed to the city after the contract was made, and on an interurban line on which the defendant had been entitled to charge an additional fare before the annexation of the territory.

The next question is whether the telephone service named in the ordinance means the general telephone service furnished by the defendant during the period of the grant, or only the kind of service with the kind of appliances and equipment which was furnished at the time the ordinance was passed. The words are general and on their face include every kind of telephone service, and we see no warrant for saying that they do not include any improved service adopted by the defendant. The improved transmitters, receivers, switch-boards and metallic circuits are the means and appliances for telephone service, and nothing else. It is true that a corporation may make a special contract with an individual, upon any terms agreeable to both parties, for services which it is not bound to furnish at all. But that is not the question here. If it be conceded that the defendant is not bound to furnish the improved service to its patrons and may furnish such service under its special contract, the individual who has entered into the contract may be bound by it. But that question is of no importance in determining whether the defendant shall be bound by its contract not to increase its rates for telephone service during the period for which it has a right to occupy the public streets. We do not see how it can be said that the city of Chicago by its ordinance gave to the defendant rights which were not restrained by

the limitations of the ordinance, and if the defendant is using the streets of the city of Chicago for a kind of telephone service which is not within the limitations of the ordinance it certainly is not within the grant. To construe the ordinance otherwise would be to say that whenever any improvement is made in the service the defendant may rid itself of all its obligations with respect to rates and still enjoy the grant,—may retain the benefits and escape the burdens of the contract. The information charges in a number of counts that the defendant is exercising powers not conferred by law, and if the streets are being used for a new and unauthorized service that fact would sustain the charge. Under the ordinance the defendant cannot be required to adopt improvements in the service or equipment or to keep up with the general progress in the business, but if it sees fit to adopt improvements and furnish a better grade of telephone service, it can only have the benefit of the ordinance granting it the right to use the public streets by complying with the terms of the ordinance and not increasing the rates.

The facts alleged in the plea, taken in connection with the charges of the information admitted or not denied, would not, in our opinion, warrant the court in declaring a forfeiture of the franchises of the corporation, but so far as the information charges the defendant with a misuse and abuse of the license and privilege granted by the ordinance and seeks to oust the defendant from the enjoyment of such license and privilege the plea is not a good defense and the court erred in overruling the demurrer.

The views we have expressed will be sufficient for a settlement of all the questions involved in the controversy, for the reason that the same principles and rules apply to all of them.

The judgment of the circuit court is reversed and the cause is remanded to that court with directions to sustain the demurrer.

*Reversed and remanded.*