[No. 7908.    Decided July 1, 1909.]

SEATTLE LIGHTING COMPANY, *Respondent*, v. THE CITY OF SEATTLE *et al.*, *Appellants.*[1]

GAS — FRANCHISES — EXTENT—"ANY ADDITIONS" TO A CITY. A franchise to lay gas pipes throughout the city and throughout any addition thereto, and as the boundaries thereof are or may hereafter be, embraces territory thereafter included in the city, and is not intended to be restricted to platted portions and other large areas not platted but within the then limits of the city.

SAME—MUNICIPAL CORPORATIONS—TERRITORY INCLUDED. Such a franchise is not void as granting rights outside the city limits.

Appeal from a judgment of the superior court for King county, Morris, J., entered February 5, 1909, in favor of the plaintiff, granting a writ of mandate to compel the issuance of a permit to lay gas mains in certain streets of a city, after overruling a demurrer to the affidavit. Affirmed.

*Scott Calhoun* and *Stephen V. Carey*, for appellants.

*H. R. Clise* and *C. K. Poe*, for respondent.

MOUNT, J.—Respondent brought this action in the lower court by mandamus, to compel the city of Seattle and its board of public works to issue a permit to respondent to lay gas mains in certain streets of said city. The appellants filed

[1]Reported in 102 Pac. 767.

a general demurrer to the affidavit for the writ. This de-murrer was overruled. The appellants stood on the demurrer. The lower court thereupon issued the writ as prayed for, and this appeal followed.

The question in the case is whether franchises heretofore granted, authorizing the respondent to lay and maintain gas mains in the city generally, authorize respondent to lay mains in streets now within the city but which streets were not within the city limits when the franchises were granted. It appears that in 1873 the city of Seattle, by an Ordinance No. 39, granted a franchise authorizing the predecessors of respondent to "lay down gas pipes and extend the service of gas throughout the city of Seattle and throughout any additions that may hereafter be made to the said city of Seattle." This ordinance was amended in the year 1881, in certain respects, but the authority in question was not materially changed. The amending ordinance recites the authority as follows: "To lay down gas pipes and extend the service of gas throughout the said city of Seattle and throughout any additions thereto." Subsequently, in the year 1901, the city, by Ordinance No. 6,968, granted a franchise to R. H. Malone and others, for a period of fifty years, to erect and maintain a gas factory in the corporate limits of the city of Seattle, "for the purpose of selling and supplying gas in the city of Seattle as the boundaries thereof are and may hereafter be." The respondent is the successor in interest of all these franchises.

It is shown by a map which is stipulated into the record that, in 1873, the city of Seattle contained ten and 42-100 square miles of territory, two and 19-100 square miles of which were then platted, the balance being unplatted land; that in the year 1901, when the last franchise was granted, the city contained forty-two and 28-100 square miles; and at the present time the city contains eighty-three and 45-100 square miles of territory. It is conceded that some of the streets where respondent seeks to lay gas pipes have been

brought within the limits of the city since the last franchise was granted.

It is contended by the appellants that the respondent has no right to lay gas pipes in any territory not within the limits of the city at the time the franchises were granted. In other words, that the rights of the respondent company are confined to the city as it was when the respective franchises were granted. Appellants argue that the franchises are to be strictly construed, and that the city had no power to grant a franchise in territory without the city limits. These last two propositions may be conceded. It will be readily seen that the franchises above referred to were not confined to any particular streets or district within the city. The language is broad and clear. The grant is a general grant, "throughout the city of Seattle and throughout any addition thereto," and "as the boundaries thereof are or may hereafter be." It is clear from the language here used that the city intended to grant the right throughout the whole city, as it then was and as it might thereafter be extended. Counsel for the city argue that, because at that time there were large unplatted areas within the city limits, the phrase "any addition thereto" was intended to cover such unplatted areas within the city limits. If such had been the intention of the ordinance, it would no doubt have used words which would have expressed that idea. The words used clearly express the opposite idea. We think a reasonable construction of the language of the grant requires us to hold that the city intended the grant to be a general continuing one, expanding with the city, and not one limited to a particular district.

Appellants also contend that the city had no power to grant a franchise without its corporate limits. It did not do so in this case. The grant is confined to the city, and is effective within and not without the city limits. As soon as new territory is taken into the city, the grant immediately attaches without any further action on the part of the city. The authorities cited to these questions seem to be all one way.

In *Tuesdale v. Newport*, 28 Ky. 840, 90 S. W. 589, the supreme court of Kentucky said:

"If the ordinance had been silent as to territory hereafter taken into the city, the meaning would have been the same. The contract is to supply the city of Newport and its inhabitants with gas. The limits of the city year by year determine the limits of the contract. The city authorities have no power to contract for anything beyond the limits of the city, and any contract they may make can only bind property within the city, and when property is added to the city it necessarily falls within their jurisdiction."

In *St. Louis Gas Light Co. v. St. Louis*, 46 Mo. 121, the supreme court of that state, in discussing this point, said, at page 133:

"Counsel submit an elaborate argument to show that the contract could not have extended beyond the city limits as then existing; that, so far as it operated upon the extensions, it was *ultra vires* and void. Had the contract by its terms provided for lighting the streets beyond such limits, it would have been so far inoperative as an exercise of territorial jurisdiction beyond its range. But it contained no such provision. The additional orders for lamps were all to be within the city, and the city is a unit, though with changing boundaries. There might be a question as to extension of the exclusive rights of the plaintiff, for grants of monopolies are to be strictly construed; but there is no doubt that a city ordinance or a city contract, designed for the city at large, operates throughout its boundaries whatever their change."

And in *People ex rel. Woodhaven Gas L. Co. v. Deehan*, 153 N. Y. 528, 47 N. E. 787, the court said, in discussing this point:

"When the right to use the streets has been once granted in general terms to a corporation engaged in supplying gas for public and private use, so such grant necessarily contemplates that new streets would be opened and old ones extended from time to time, so the privilege may be exercised in the new streets as well as in the old. Such a grant is generally in perpetuity or during the existence of the corporation, or at least for a long period of time, and ought to be given effect according to its nature, purpose and duration."

This language was. quoted with approval in *Illinois Central R. Co. v. Chicago*, 176 U. S. 646, 20 Sup. Ct. 509, 44 L. Ed. 622.

See, also, *People ex rel. Chicago v. Chicago Telephone Co.*, 220 Ill. 238, 77 N. E. 245 ; *Des Moines Water Works Co. v. Des Moines*, 95 Iowa 348, 64 N. W. 269.

It seems clear that, when new territory is brought into a city, general ordinances of the city immediately control the new as well as the old territory, and do not require express legislative action to give them such application. *Town of Toledo v. Edens*, 59 Iowa 352, 13 N. W. 313 ; *Indiana R. Co. v. Hoffman*, 161 Ind. 593, 69 N. E. 399 ; *McGurn v. Board of Education*, 133 Ill. 122, 24 N. E. 529. An ordinance granting a franchise generally stands upon the same footing as any other ordinance of the city.

The appellants also contend that, inasmuch as Ordinance No. 6,968, granting the last franchise above mentioned, contained obligations to be performed by respondent, different from the former grant, the city had a right to know under which franchise the respondent intended to lay its mains. But we have seen above that the respondent had a right to lay its mains under all of the ordinances named. Whether the burdens have become merged or are still separate and can therefore be selected by the respondent, are questions which are not necessarily before us in this case.

For the reasons stated herein, the judgment of the lower court was right, and is therefore affirmed.

RUDKIN, C. J., FULLERTON, CHADWICK, GOSE, and CROW, JJ., concur.