SAMUEL W. HAYES,
MATTHEW J. KANE,       } JUSTICES.
JOHN B. TURNER,
R. L. WILLIAMS,

---

## TULSA STREET RY. CO. v. OKLAHOMA UNION TRACTION CO.

No. 1750.    Opinion Filed November 16, 1910.

1. **MUNICIPAL CORPORATIONS—Grant of Right to Use Streets—Exclusiveness of Grant.** An ordinance of a municipal corporation granting to a person or corporation authority to use the streets and highways of a city for the purpose of constructing and operating a street railway system confers privileges which are exclusive in their nature against all persons upon whom similar rights have not been conferred; and any person or corporation attempting to exercise such rights, without legislative authority or sanction, invades the private property of the person or corporation to whom such franchise has been granted, and may be restrained at the instance of the owner of the franchise.

2. **SAME—Street Railway Franchises.** The owner of a street railway, being operated upon the streets of a city under a franchise, which was not exclusive, brought an action to enjoin another company from constructing and operating, without a franchise or authority from the municipality, a street railway upon the streets of said city. The defendant company answered that it was acting under legislative authority granted by ordinance of the city council. Held, that the court had power to investigate

the facts and determine whether defendant had a franchise, and if it had an alleged franchise, might determine whether such franchise was invalid because granted without authority of law.

3. MUNICIPAL CORPORATIONS—Annexation of Territory—Procedure. Where. under the procedure prescribed by sec. 922 of Mansf. Dig. Statutes of Arkansas, for annexing contiguous territory to a municipal corporation, a majority of the votes cast at the election to determine whether the territory shall be annexed is in favor of annexation, the annexation becomes effective and the annexed territory becomes part of the corporation, if no notice of complaint against annexation is given, thirty days after the transcript is filed with the court as provided by said election, and not on the date of the election.

4. MUNICIPAL CORPORATIONS—Street Railway Franchises—Construction. A municipal corporation of the Indian Territory, before the admission of the state, granted by ordinance to a street railway company the right to use the streets and highways of the city and to construct and operate a street railway system. Section 1 of the ordinance reads: "That B, his associates, heirs, representatives and assigns, hereinafter termed and styled grantees, is hereby granted the right, privilege and franchise to construct, operate and maintain a single or double track electric or trolley street railway over and along the streets and highways of the city of Tulsa, Indian Territory, excepting Frankford Avenue, Greenwood Avenue. North First Street, (and other named streets in the section), and their extensions to the city limits." Said section, considered and construed in connection with the other provisions of the ordinance, held to grant to the grantee therein and his assigns the use of all the streets of the city and their extensions thereafter brought within the municipal corporation by annexation of territory except those streets specifically named in the excepting clause of the section and their extentions; and that the granting of such franchise was within the power of the city council and is not void.

(Syllabus by the Court.)

*Error from District Court, Tulsa County; L. M. Poe, Judge.*

Action by the Oklahoma Union Traction Company against the Tulsa Street Railway Company. From-an order granting a temporary injunction, the railway company appeals. Reversed and remanded.

*Chas. J. Wrightsman, Chas. E. Bush,* and *Victor O. Johnson,* for plaintiff in error.

*Magee, Magee & Connor* and *Hainer & Martin,* for defendant in error.

HAYES, J.   This action was brought in the court below by defendant in error, hereinafter called the "traction company," against plaintiff in error, hereinafter called the "railway company." The traction company alleges in its petition that it has a franchise to contruct a line of street railway over certain streets of the city of Tulsa, and that it is now, under said franchise, constructing a line of street railway from the center of the city to Owen Park.   It alleges that the railway company is threatening to build and is now building a line of street railway from the center of the city to the same park; that said line of railway is now being constructed and will be constructed in part over streets without authority under any franchise granted by the city or other legal authority; that the line of railway being constructed by the railway company is parallel to plaintiff's line of railway; and that if the railway company is permitted to construct and operate its line of railway it will take from plaintiff the principal source of its income, profit and revenue derived from its business under its franchise; that such result will follow from the street railway company's constructing a public nuisance in and obstructing the streets and highways of the city without legal right or authority.

A temporary restraining order was granted to the traction company.   Later the railway company filed its answer, and the court, after hearing the evidence of both parties, granted a temporary injunction.   The railway company immediately moved to dissolve the temporary injunction; and, by agreement, the testimony taken on the hearing of the application for a temporary injunction was considered as the evidence upon motion to dissolve. The motion to dissolve was overruled.   Thereafter this proceeding in error was brought.   Both parties have treated this proceeding as an appeal both from the order granting the temporary injunction and from the order of the court refusing to dissolve same.   It is the settled rule, under the statute now in force in this state, that an appeal will not lie from an order refusing to dissolve or modify a temporary injunction.   *School District No. 8 et al. v. Eakin et al.*, 23 Okla. 321; *Kuchler et al. v. Weaver*, 23 Okla. 420.   But the

case-made was prepared and served within the period of time granted within three days after the granting of the temporary injunction, and the appeal was perfected within the statutory time for taking appeals from such orders. This proceeding, therefore, will be treated as an appeal from the order granting the temporary injunction.

The railway company, by its answer, alleges that it is acting under a franchise granted to it by the city of Tulsa, by the terms of which it alleges right is conferred upon it to construct, maintain and operate upon all the streets of the city of Tulsa, except certain named streets, a line of street railway. The traction company contends that the right to build upon certain of the streets between the center of the city and Owen Park, the terminus of both lines of railway, is not included within the terms of defendant's franchise; and that, if such right is included, it was without the power of the city to grant same, and the railway company's franchise to that extent is void. As a counter contention, the railway company urges that the traction company cannot, in a proceeding for injunction, have the court construe defendant's franchise for the purpose of ascertaining that its franchise does not attempt to convey to it the rights contended for; and, if it does, that it is void; that such questions can be presented for determination only in a proceeding instituted by the city. These contentions present a question of law preliminary in its nature to the other questions involved in this proceeding, and will be considered first.

A somewhat similar contention was considered by this court in *Bartlesville Electric Light & Power Company v. Bartlesville Interurban Railway Company*, 26 Okla. 453, 109 Pac. 228, hereinafter referred to as the "Bartlesville case." In that case plaintiff, under a franchise, occupied the streets of the city for the purpose of maintaining and operating an electric light plant, and sought to enjoin a similar company without any franchise from using the streets for the same purpose. The distinction between the facts in the case and the instant case is that the defendant company in that case admitted that it had no legislative authority

to occupy and use the streets and alleys of the city. There was no question of fact or of law to be determined in that case in order to ascertain whether the defendant was a trespasser upon the streets. This difference in the facts of the two cases, it is contended, requires the application of a different rule to the present case. In the Bartlesville case reference was made to *The Coffeyville Mining & Gas Co. v. The Citizens' Natural Gas & Mining Co.*, 55 Kan. 173, the only case relied upon by defendant in that case; and, in criticism of the Kansas case, it was said that that portion of the Kansas case which holds that a company operating under a franchise can not, if no ordinance granting defendant a franchise had been passed, try the right of defendant to use the streets, is not only *obiter*, but is also unsupported by the better reason or by the weight of authority. No comment was made upon that portion of the case which holds that the validity of a franchise under which the defendant was acting could not be questioned; but we think that that portion of the decision is subject to the same criticism as the other portion. In the Bartlesville case the following is quoted with approval from *Mellville Gas Light Co. v. Vineland Light & Power Co.*, 72 N. J. Eq. 305:

"Legislative grants of franchises, whether granted by special charters or under general laws, confer privileges which are exclusive in their nature as against all persons upon whom similar rights have not been conferred. Any attempted exercise of such rights, without legislative sanction, is not only an unwarranted usurpation of power, but operates as a direct invasion of the private property rights of those upon whom the franchise have been so conferred."

Numerous authorities supporting the rule announced in the foregoing quotation are cited in the Bartlesville case. If the grantee of a franchise has a privilege under the franchise which is exclusive as to those who have not a similar privilege, and such privilege is private property, what reason is there for denying to the owner of such privilege the same remedy to protect that property when special injury is inflicted upon it by one maintaining a public nuisance that is given to other owners of private property? If an abutting owner is specially injured by a railway company

who occupies the street without legislative authority, it would not be questioned that such abutting owner would have his remedy to enjoin the nuisance because of ·the special injury he suffers. Nor could the defendant in such an action oust the court of jurisdiction by pleading that it acted under a franchise, when in fact it did not, or by pleading that it acted under a franchise which was granted by a body without authority. *Allen v. Clausen,* 114 Wis. 244. There can be no reason for a difference of remedies to protect property that abuts the streets and to protect property that lies in the street. Whether a defendant company is a trespasser upon the streets may be a question of fact or a question of law, the determination of which may be as easily had in an equitable proceeding for an injunction as in any other proceeding; and, whether in any case it be a question of fact or of law or both, the determination of such question is entirely different from a proceeding to forfeit a franchise for the nonperformance of its condition. the latter of which questions may be determined only at the instance of the city or of the public granting the franchise. The only cases cited by the railway company in support of its contention are the Kansas case, *supra,* and *The Market Street Railway Company v. The Central Railway Company,* 51 Cal. 583. The court in the last named case, without stating any reason or citing any authorities, holds that a company occupying the streets of a town by legislative authority cannot complain that the streets are being used by another without such authority.

In the first paragraph of the syllabus to the Bartlesville case, it is said:

"An ordinance of a municipal corporation granting to a corporation authority to use the streets, alleys, and public grounds of· a city for the purpose of cons.ructing and operating an electric light and power plant to furnish light and power to a city and its inhabitants confers privileges which are exclusive in their nature against all persons upon whom similar rights have not been conferred; and any person or corporation attempting to exercise such right, without legislative authority or sanction, invades the private property rights of the corporation to whom such franchise has been

granted, and may be restrained at the instance of the owner of the franchise."

The rule stated in this syllabus, although in conflict with the doctrine of the Kansas and California cases, *supra,* is, we think, in addition to being supported by the better reason, supported by the weight of the decided cases wherein the facts involved are similar to those in the case at bar. In each of the following cases, as in this case, the defendant claimed the right to use the streets under legislative grant, and the plaintiff denied either the existence or the validity of such grants: *Twin Village Water Co. v. Damariscotta Gas Light Co.,* 98 Me. 325; *Central Crosstown Ry. Co. v. Metropolitan St. Ry. Co.,* 44 N. Y. Supp. 752; *Central Railroad Co. of New Jersey et al. v. The Pennsylvania Railroad Co. et al.,* 31 N. J. Eq. 475. See, also, *State ex rel. Morgans, etc., Ry. Co. v. Judge of Dis. A,* 52 La. Ann. 1065; *The Jersey City Gas Co. v. Dwight et al.,* 29 N. J. Eq. 242.

In the case last cited, where a contention was made similar to the one being urged by the railway company here, it is said:

"It is admitted, if a corporation, lawfully constituted, usurps a franchise to the injury of another, the jurisdiction of the court is unquestionable; but, it is said, when the usurpation consists in a fraudulent assumption of corporate existence in order to acquire a franchise, the court is powerless to investigate or to give redress. Such a usurpation, although it produces a most serious private injury, gives no right it is contended, to a personal remedy in a court of equity. The argument, in my judgment, is unsound both in its logic and its law."

In that case it was charged that the defendant company was not only usurping a franchise under which it pretended to act, but that it was usurping its corporate character; and the court investigated both questions. We, therefore, adhere to the rule announced in the first paragraph of the syllabus to the Bartlesville case, and hold that, although in a proceeding by the owner of a franchise, authorizing it to use the streets and alleys of a city for certain purposes, to enjoin a company alleged to be using such streets and alleys for a similar purpose, without authority, it is

contended by the defendant company that it acts under legislative authority, the court may investigate the facts and determine whether the defendant company has a franchise, and if it has a pretended franchise, may determine whether such franchise is invalid because granted without authority of law.

Consideration of the other questions presented by this proceeding requires an epitome of the facts out of which this action arose. On November 20, 1905, the city of Tulsa granted to one Parker and others a street railway franchise which was subsequently assigned to the railway company. Later, on the 5th day of April, 1907, a second franchise was granted to C. H. Bolser, which was subsequently assigned to the railway company. Since it is under this latter franchise that the railway company now claims its rights, it is unnecessary to set out the terms of the first one. The granting clause of the last named franchise reads as follows:

"Section 1. That Charles H. Bosler, his associates, heirs, representatives and assigns, hereinafter termed and styled grantees, is hereby granted the right, privilege and franchise to construct, operate and maintain a single or double track electric or trolley street railway over and along the streets and highways of the city of Tulsa, Indian Territory, excepting Frankfort Avenue, Greenwood Avenue, North First Street, North Second Street, Detroit Avenue, Elwood Avenue, North Fourth Street, South Fourth Street, South First Street, South Sixth Street, South Seventh Street, South Ninth Street, Elgin Avenue, Denver Avenue, and their extensions to the city limits."

Owen Park, at the time of the granting of this franchise, did not lie within the city limits, nor were there any streets within the city limits over which the railway company could reach Owen Park at the time of the granting of this franchise, unless a certain proceeding to extend the limits, which had been begun before the enactment of the ordinance granting the franchise, became effective for the purpose of bringing said addition within the limits of the city before its enactment. If the proceeding for bringing the addition into the city was completed before the granting of the franchise on April 5, 1907, then a portion of the streets over which the railway company is now attempting to build lay within the limits of

the city at the time of the grant, and, while another street over which the railway company attempts to build did not lie within the city limits, there was a street lying within the city limits the use of which the franchise grants to the railway company and by which the Park could be reached. On the 25th day of February, 1907, an ordinance was passed calling an election which was held on April 2, 1907, at which it was voted to extend the limits of the city and bring in the addition referred to. This procedure for extending the city limits was authorized by the provisions of section 922 of Mansfield's Digest of the Statutes of Arkansas, which provides·that when any municipal corporation shall desire to annex any contiguous territory thereto, lying in the same county, it shall be lawful for the council to submit the question to the qualified electors at least one month before the annual election. "If a majority of the votes cast on that question shall be in favor of annexation, the said corporation shall present to the county court a petition praying for such annexation  *  *  *  and if within thirty days after a transcript shall be delivered as provided, no notice of a complaint against such annexation shall be given at the end of said thirty days  *  * ' *  the territory shall, in law, be deemed and be taken to be included in and shall be a part of said corporation.  *  *  *"

The election authorized by this section was held just three days before the franchise was granted. The thirty days time after the filing of the transcript, as provided by said section, within which objections could be made to the annexation had not expired. No objections were ever made, and counsel for the railway company contend that the annexation took effect as of the date of the election; but this contention is in conflict with the plain terms of the statute, for, by it, it is provided that after the transcript is filed, there shall be a period of thirty days for the giving of notice of a complaint against the annexation, and if no such notice is given within that period, then "at the end of said thirty days the territory shall in law be deemed and be taken to be included in and shall be part of said corporation." This language is too

plain and explicit to admit of doubt or require construction. It is at the end of thirty days period for making complaint that the annexation shall be deemed to be effective, if no complaint has been made within that period. The extension of the limits of the city was effected after the granting of the franchise; and the railway company's rights upon the streets in controversy must be determined by the terms of the franchise. This brings us to the questions: Does the ordinance which grants to the railway company the use of streets then within its limits also grant the use of streets thereafter brought within the city limits and the use of the street extensions lying without the city limits at the time of the grant, but afterwards brought within the city limits; and, if it does, is such grant valid?

The granting clause of the franchise is contained in section 1 of the ordinance, *supra*. By the general terms of the grant, the railway company is granted "the right, privilege and franchise to construct, operate and maintain a single or double track electric or trolley street railway over and along the streets and highways of the city of Tulsa. * * *" It is not questioned that this general language grants to the railway company a right to occupy and use any and all the streets of the city, as they existed at the time of the passage of the ordinance, for the construction and maintenance of its railway. That it was intended to include not only the streets as they then existed, but as they should thereafter be extended or increased, save those excepted by the following clause of the section, we think is made obvious by the language of that clause. The clause is an excepting or saving clause and reads: "excepting Frankfort Avenue and Greenwood Avenue * * * and their extensions to the city limits."

Counsel for both parties agree that the phrase, "and their extensions to the city limits," is part of the excepting clause, and refers to those streets specifically named in that clause. The meaning of this phrase would be more definite, but not different, if the clause had been expressed in the following language: "excepting Frankfort Avenue and Greenwood Avenue * * * and the ex-

tensions of said named streets to the city limits." What was intended by the city council by the entire language of this section, including not only the terms of the general grant, but of the saving clause? The answer, we think, is made obvious by an analysis of the section. Why were the "extensions" of the streets specifically named in the saving clause also specifically included, if it was not intended by the conucil by the general terms of the grant to include extensions of the streets as well as those streets then existing? The exception of the extensions to the particular named streets shows that it was of the opinion of the council that, if they were not excepted, they would be included within the general words of the ordinance granting to the railway company the rights to use all the streets of the city. Mr. Chief Justice Marshall, in *Brown et al. v. State of Maryland,* 12 Wheat. 419, said:

"The exception of a particular thing from general words, proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made."

In *Arnold v. United States,* 147 U. S. 494, application of this rule was made in construing certain provisions of the tariff act of 1883, which in part reads as follows: "Clothing, ready made, and wearing apparel of every description  *   *   *  excepting knit goods, four cents per pound, and in addition thereto, thirty-five *per centum ad valarem."* By a subsequent act of Congress, that portion of the act quoted, reading "knit garments, etc.," was struck out, and the question then arose whether the garments named in the excepting clause struck out would be included in the general terms of the act and subject to the duty imposed upon such goods. After stating the rule quoted from *Brown v. Maryland, supra,* Mr. Justice Brewer, who delivered the opinion of the court, said:

"Applying that rule it follows that but for the exception the general description of 'clothing, ready made, and wearing apparel' would include knit goods; and when by the legislation of 1890 this exception was stricken out, it is very persuasive that Congress understood and intended that no articles of wearing apparel should

be excepted from the enumeration of paragraph 396, because they were knit goods or fabrics."

In *Gibbons v. Ogden,* 9 Wheat. 1, it is said:

"It is a rule of construction, acknowledged by all, that the exceptions from a power mark its extent; for it would be absurd, as well as useless, to except a granted power that which was not granted—that which the words of the grant could not comprehend. If, then, there are in the Constitution plain exceptions from the power over navigation, plain inhibitions to the exercise of that power in a particular way, it is a proof that those who made these exceptions, and prescribed these inhibitions, understood the power to which they applied as being granted."

See, also, *Commonwealth v. Summerville,* 204 Penn. St. 300.

So, in the case at bar, we say it is plain that the council, in granting, understood that the use of streets thereafter to be added to the city by extending the city limits was granted by the general terms of the ordinance, and to save extensions of certain streets from its operation, it excepted them from the general terms, just as it excepted specifically named streets. That this was the intention, when the ordinance was enacted by the city and accepted by the grantee, is supported and made more obvious by the general scope and purpose of the grant shown by the context to have been in the contemplation of the lawgivers at the time of the enactment of the ordinance. It was intended to authorize the railway company to construct a city railway system that not only would accommodate the inhabitants of the city with its present population, but would accommodate them when that population reaches many times its present size.

Section 10 provides that when the city shall reach a *bona fide* population within its corporate limits of not less than 50,000 inhabitants, the grantee shall thereafter pay to the city a sum annually equal to two per cent. of its gross receipts during the entire life of the franchise. In 1907, the year this ordinance was enacted, the city of Tulsa, according to the special federal census of 1907, of which we take judicial notice, had a population of a little over 7,000. In order for the foregoing provision of section 10 to be-

come operative, it is necessary for the city to undergo great growth and development, not only in population, but in area within its city limits. Can it be reasonably said to have been the intention of the parties that for the purpose of the grant the ordinance was to be operative only within the city limits at the time of the grant, but for the purpose of the obligations and burdens imposed upon the railway company the corporate limits are to be determined as they exist from time to time in the future?

Section 9 provides that, at the expiration of twenty years from the granting of the franchise, the city shall have the right, upon the terms herein mentioned, to purchase the entire plant of said grantees "embracing its city system."

Section 11 provides that the grantees and their assigns shall permit interurban lines of electric railway that desire to enter the city of Tulsa, for the purpose of such entrance, to use the tracks and street railway of the grantees for a reasonable charge, to be determined in the manner provided by said section.

Able counsel for the traction company have contended with much emphasis that the familiar rule of construction, which requires that all public grants shall be construed strictly against the grantee, should be applied to the grant in this case, and it be held limited to the streets as they existed at the time of the passage of the ordinance. But this rule of construction requires no such harsh application as to prevent a consideration of the entire act to ascertain its fair meaning, or that it shall be applied to the exclusion of all other rules of construction, when the obvious meaning and intent may be ascertained by the application of such rules. In the construction of contracts from the public to private individuals, just as in the construction of contracts between private parties, the intention of the parties is the primary object sought. Rules of construction are not applied to conserve and justify such rules, but that the fair intendment of the parties may be conserved. That public grants are to be construed liberally in favor of the public, where doubt arises as to the limit of the grant, does not mean that ambiguous clauses of the grant are to be considered as isolated from

the context, and because of such ambiguity strict construction against the grantee made. Such clauses are to be considered in connection with the immediate language of the context and the purpose and scope of the whole act; and, if upon a reading of the whole, the meaning of the lawmakers is obvious, that meaning should be given effect.

In *People ex rel. v. Deechan,* 153 N. Y. 528, it is said:

"The rule that public grants are to be construed strictly against the grantee means simply that nothing shall pass by implication except it be necessary to carry into effect the obvious intent of the grant. But the obvious intention of the parties, when expressed in plain language, cannot be ignored in a public any more than in a private grant. A construction that would lead to false consequence or unjust or inconvenient results, not contemplated or intended, should be avoided in a grant as well as in a statute."

In that case a corporation, organized for the purpose of supplying gas for lighting the streets of a town in New York, was granted by the town authorities consent to place gas conductors in the streets and highways of the town. Afterwards the town authorities refused to permit the corporation to lay its gas conductors in a street which was within the territory embraced within the town at the time of the grant of the franchise, but did not exist as a street or highway when the grant was made. A proceeding for mandamus to compel the town authorities to grant such permission was brought, and the writ was awarded by the court of appeals of that state. In the opinion it is said:

"It cannot reasonably be contended that the relator is obliged to apply for a new grant whenever a new street is opened or an old one extended, as would be the case if the consent applied only to the situation existing when made. When the right to use the streets has been once granted in general terms to a corporation engaged in supplying gas for public and private use, such grant necessarily contemplates that new streets are to be opened and old ones extended from time to time, and so the privilege may be exercised in the new streets as well as in the old."

In granting franchises there can be no difference in the power of the municipal corporation over streets lying within its limits

at the time of the grant, but not yet dedicated or condemned and opened, from its power over streets not then within its limits but subsequently brought into the city by the annexation of territory. A franchise conveys no right except as against the public. The public has no more right in an undedicated, uncondemned and unopened street within the city than it has in a street lying without the city. The franchise confers upon the grantee only the privilege of using or sharing with the public the use of the streets. It makes such use lawful which would otherwise be unlawful and subject the user of the street to a prosecution by the public. But it in no way affects the property or rights of persons having a right in the street or the land across which the same lies, other than as a member of the public. The ordinance in the case at bar does not attempt to authorize the grantee to construct its railway system or any part thereof upon lands outside of the city limits. It only confers a privilege and makes it lawful for the grantee to construct its railway system upon any or all of the streets within the city limits, except those named and their extensions. Discussing this question, in *Seattle Lighting Co. v. City of Seattle et al.* (Wash.) 102 Pac. 767, the court said:

"Appellants also contend that the city had no power to grant a franchise without its corporate limits. It did not do so in this case. The grant is confined to the city, and is effective within and not without the city limits. As soon as new territory is taken into the city, the grant immediately attaches without any further action on the part of the city."

Other cases in point, or the reasoning of which supports this doctrine, are: *Truesdale v. City of Newport* (Ky.) 90 S. W. 589; *The St. Louis Gaslight Co. v. The City of St. Louis*, 46 Mo. 121; *Illinois Central Railroad Co. v. City of Chicago*, 176 U. S. 646; *People ex rel. Westminister Heights Co. v. Coler et al.*, 105 N. Y. Supp. 887; *People v. Chicago Telephone Co.* (Ill.) 77 N. E. 245.

It is next urged that, by reason of certain provisions of the statute, power to grant a franchise conferring upon the grantee the right to use streets within the corporate limits, as those limits are

extended from time to time by annexation, is denied municipal corporations in the Indian Territory.

Section 753 of Mansf. Dig. of the Statutes of Arkansas provides, as to such corporations, that:

"They shall have power to provide a supply of water by the construction and regulation of wells, pumps, cisterns, reservoirs and water-works; to prevent the unnecessary waste of water; to prevent the pollution of the water and injury to the water-works, and for the purpose of establishing or supplying water-works any municipal corporation may go beyond its territorial limits; and its jurisdiction to prevent or punish any pollution or injury to the stream or source of water, or to the water-works, shall extend five miles beyond its corporate limits."

Section 754 reads:

"They shall have power to provide for lighting the streets and alleys of the city by gas or otherwise, and to authorize the construction of gas-works and of street railroads."

It is urged that section 753 specifically confers upon such municipal corporations jurisdiction over territory beyond the corporate limits to grant franchises for the construction of water-works; and that, since such jurisdiction is not specifically conferred in the succeeding sections relative to street railroads, the rule *expressio unius exclusio alterius* applies. This contention is based upon a misconception of the character of the power specifically conferred by section 753. Said section, standing alone, does not confer upon a city the right to use any property beyond its limits or to grant the use of such property to any one for the purpose of establishing water-works; but it does confer upon a city the power to acquire property for such purpose and police power over territory beyond its corporate limits to prevent and punish pollutions or injury to the stream or source of water, or to the water-works established. No right of way beyond the city limits is conferred by this section upon a city, nor is it authorized to grant such right of way to any one whom it may authorize to construct a water-works system. It may acquire such right of way. Section 755, authorizing municipal corporations for the purpose of providing water, gas, or street railroads, provides that the mayor and city

council may contract with any person or company to construct and operate the same and to grant to such person or company, for a time which may be agreed upon, the exclusive privilege of using the streets and alleys of a municipality for such purpose or purposes. The power delegated by this section to municipal corporations to contract for the construction and operation of street railroads is in the same terms that like power is granted as to water-works. It is a general grant of power, without any limitations.

It is also contended that such franchise is void, because in violation of section 5, art. 18 of the Constitution, which provides that "no municipal corporation shall ever grant, extend or renew a franchise, without the approval of a majority of the qualified electors residing within the corporate limits, who shall vote thereon at a general or special election." This contention is without merit. No effort or act has been made on the part of the city, since the adoption of the Constitution, to grant a new franchise to the railway company, or to extend or renew the one it now has. The rights that it is now attempting to exercise are those granted by the ordinance when it was enacted. It is true that the privileges under this franchise may have become more valuable, because of the annexation of additions to the city, just as it has become more valuable because of an increase of the population in the city; but these benefits are among those contemplated by the parties at the time of the grant and included within its terms then, and are not derived from any act of the municipality subsequent to the adoption of the Constitution.

There are other assignments of error that complain of the refusal of the court to admit certain evidence, and that the traction company is estopped by its laches. But since, under our view of the questions already considered, the traction company cannot successfully maintain this action, it is unnecessary to consider those assignments.

The judgment of the trial court is reversed, and the cause

remanded, with instructions to set aside the order granting the temporary injunction.

All the Justices concur.