Hough, J.
The case is one in which the original jurisdiction of the court is involved, and was submitted on the pleadings, testimony taken thereunder, and oral and written arguments of counsel.
From the transcript of the testimony and admissions in the pleadings it appears that there is very little if any dispute of fact, and, further, that there is evidence tending to prove all the material averments of the petition.
The controversy therefore resolves itself into a consideration of the legal principles arising from an application of the facts to the issues made.
“Quo warranto in its broadest sense is a proceeding to determine the right to the use or exercise of a franchise or office and to oust the holder from its *124 enjoyment, if his claim be not well founded, or if he has forfeited his right to enjoy the privilege.” 32 Cye., 1412.
"Whatever may be said of the right generally, it obtains, and its scope is defined, in this state by constitution and statute. The pertinent portions of Section 12304, General Code, read:
“A like [civil] action may be brought against a corporation: * * *
“3. "When it has committed or omitted an act which amounts to a surrender of its corporate rights, privileges, and franchises;
“4. "When it has misused a franchise, privilege, or right conferred upon it by law, or when it claims or holds by contract or otherwise, or has exercised a franchise, privilege, or right in contravention of law.”
In the same chapter of the General Code we find Section 12323, reading as follows :
“"When, in such action, it is found and adjudged that, by an act done or omitted, a corporation has surrendered or forfeited its. corporate rights, privileges, and franchises, or has not used them during a term of five years, judgment shall be entered that it be ousted and excluded therefrom, and that it be dissolved. ’ ’
Section 12324 provides: “When it is found and adjudged in such case, that a corporation has offended in a matter or manner which does not work such surrender or forfeiture, or has misused a franchise, or exercised a power not .conferred by law, judgment shall be entered that it be ousted from the continuance of such offense or the exercise of such power.”
*125 The first section above quoted confers the right, the latter two define the remedy against an offending corporation, and Section 2 of Article IV of the Constitution of the State vests the supreme court with original jurisdiction.
By the prayer of the petition the state seeks to be advised by what wa rrant the railway company claims to have, use and enjoy the privileges and rights under its franchise, and asks that it be ousted from the same and be compelled to remove its tracks, poles, wires, ties, etc. The issues tendered and the jurisdiction invoked are therefore planted on the statutes of the state in respect to quo warranto proceedings and are directed against a corporation as the grantee and holder of the franchise. Being a statutory action in which this court is clothed with original jurisdiction, naturally those issues tendered must be bounded and limited by the scope of the jurisdiction provided in the statute.
Section 12315, General Code, provides:
“The defendant may * * * file an answer, which may contain as many several defenses as he has.”
This as a matter of practice, as well as one of authorized scope, permits the defendant to answer the averments of the petition by way of defense, but naturally bounded and limited by the rule above announced. The issues made by the pleadings must of necessity be so limited as to come within the authority granted by the legislature in this character of proceeding, and also within the authority of this court, relief being sought, as it is in this case, by recourse to the original jurisdiction of this court.
*126 The action or failure of action on the part of the highway advisory board; the selection of a particular kind of brick, under bids submitted to the highway commissioner; and the time in which the award was made after the bids' were open, covered in the 3d, 4th and 5th defenses of the answer, are all questions directed to the regularity of the proceedings for the improvement.
Where an abutting property owner is affected, or is to be assessed, ample remedy is furnished and opportunity for redress given in courts of competent jurisdiction, other than and not including the supreme court. This action by the state is directed against the corporation in its corporate capacity, as the holder, owner and grantee of a franchise granted to it by the sovereign power of the state, through its properly delegated authority. Defenses 3, 4 and 5 are not addressed to that issue, and are insufficient in law in this case.
In the second defense res adjudicata is pleaded, where it says an injunction was granted the railway company in the court of common pleas of Franklin county, restraining the highway commissioner from awarding the bid and contract, and alleges that the same is in full force and effect at this time. The record of that case is before us. Without going into a lengthy analysis of the record it will be sufficient to state the final understanding between counsel and the court. The defendant in the case was the former highway commissioner. His counsel said: “If that is the case, can the temporary restraining order that has been entered here, be dissolved?” The court said: “It is all dissolved.” Counsel for the railway company said: “We understand it.” The *127 court then said: “There isn’t any restraining order now. The party against whom the restraining order' is issued is gone, and there isn’t any restraining.”
The party restrained had gone Out of office, and it was thoroughly understood that there was no longer a restraining order. The railway’s petition, brought as a property owner, sought equitable redress by injunction and nothing else. Since that time the railway company has done nothing to reinstate the case; filed no motion for the substitution of a party defendant; filed no supplemental petition.
It is clear that the railway’s counsel had no misunderstanding about the status of his case, for he later filed a petition of like import in the court of Marion county, which was disposed of by that court before action in the instant case was instituted. From the finding of fact necessary from this state of the record, the second defense must fall.
The Columbus, Delaware & Marion Electric Company is authorized to use the public highway, including Section P, by virtue of, and only by virtue of, the franchise granted by the commissioners of Franklin county, for a period of twenty-five years from the date of its acceptance on July 10, 1917. This is its grant of authority upon which is founded the right to use the highway. The grant is as broad and comprehensive as its own legal provisions, and there it is limited. The sovereign power of the state, by the terms of its provisions, bestowed this franchise upon this corporation through the delegated authority of the county commissioners. The rights thus bestowed are sacred and indefeasible during the life of the franchise so long as the company performs and keeps the faith of its covenants.
*128 .The franchise in terms provides, Section 2:
“Said railway shall be removed to the center of the highway as said highway is permanently improved by paving. The center line of said railway shall be located coincident with the center line of the paved part of said roadway * * *. Reasonable notice shall be given of the intention to improve said roadway by paving, so that the necessary rails and materials may be secured for the removing of said railway from its present location to the center of the highway.”
Then follows this provision: “Upon the granting of this franchise and its acceptance, the grantee shall proceed, without unnecessary delay, to locate its tracks in the center of the highway from the north corporation line of the city of Columbus northwardly to the northern extremity of the roadway improvement now under construction, and shall remove its present tracks along the same portion of the highway as soon as the new track is complete and ready for practical operation.”
And this: “Whenever the remainder of said highway [and this refers to Section P] is permanently improved from the north end of the portion of said highway now under construction northwardly, said grantee shall, simultaneously with said improvement, provide rails, do the necessary grading, install its tracks and pave between its rails and for one foot on the outside thereof according to plans and specifications to be approved by the authorities in control of said highway.”
Section 3 provides: “Said grantee in the future shall conform its tracks and grades to any new grades that may be established by the county commissioners,” etc.
*129 Section 4: ‘ ‘ Simultaneously with the removal of said railway to the center of said highway, the grantee shall have the right to, and shall erect and maintain iron or wood poles,” etc.
The board of county commissioners gave notice to the railway company of its intention to improve Section P, on December 3, 1919, and July 8, 1920, in accordance with the method provided in the franchise. On March 30, 1921, the board further served on the railway company a copy of a resolution passed by it on that day. The resolution reviewed the former action of the board and state highway commissioner, the failure of action on the part of the railway company, directed attention to the notices that had been theretofore served, and directed the railway company to move its tracks to the center of the highway and to simultaneously with the construction of the improvement provide rails, ties, etc., and commence carrying out the requirements of the resolution within five days after its service.
Nothing was done by the railway company to comply with this resolution or to comply with any action contemplated by the former notices. This suit was then instituted on the 13th day of June, 192.1, and so far as the record discloses, there has been nothing done on the part of the railway company toward compliance up to the present time.
The contract for the improvement was entered into on the 21st day of March, 1921. The preliminary steps leading up to the making of the contract had been undertaken and carried out long before that time, dating back even to the latter part of 1919 and the early part of 1920, all of which was well known to the railway company.
*130 As we have seen from an examination of the franchise the company had agreed to remove its tracks, wires, poles, ties, etc., to the center of the highway, simultaneously with the improvement, and to pave between the tracks in the new location and one foot on either side. This feature of the case was disposed of in the former decision of this court passing upon the demurrer, so that it is unnecessary to say more here than that the railway company has clearly failed in its contractual duty as set out in the clear and concise language upon that subject in the franchise.
Section 7204, General Code, in force during all the time herein mentioned, provides for the removal and relocation of tracks, poles and wires of electric railway companies, in case the same constitute obstructions in a highway, or interfere with the improvement thereof.
On the 30th day of March, 1921, the highway commissioner notified the railway company that its tracks and other appliances did obstruct the highway by reason of their location on Section P, and did interfere with the improvement thereof, and ordered the removal of the obstructions and the relocation thereof in the center of the highway in accordance with the terms of the franchise. This notice was also apparently ignored by the company, at least no action was taken thereunder. The section of the statute above referred to is pertinent to the state of facts in the instant case for the reason that the franchise in terms makes that statute a part of it. In Section 11 of the grant we find this language:
‘ ‘ This franchise is granted and accepted in all respects subject to any and all statutes or amendments *131 thereto as may now be in force or hereafter enacted pertaining to the operation of electric or interurban railways over and upon the public highways.”
The railway company by its refusal and failure to comply has violated the plain terms of its franchise, and by failing to comply with the request filed under Section 7204, General Code, has violated the section of the statute made a part of its grant of authority. .
What is the power of this court under such circumstances?
Counsel for defendant claims that the terms of the franchise do not cover or contemplate forfeiture; that the grant bestowed under the power of the county commissioners, acting as the delegated agency of the state, is inviolate, and that an attempt at forfeiture would necessitate reading into the franchise a provision to that effect that does not exist.
In the first place, it must be remarked that the railway company has no present right to occupy the east side of the highway, because had it complied with the intent and unequivocal terms of its franchise, its right of way would now be located in the center of the highway.
The further claim is made that the redress sought is improper, for the reason that the franchise-contract furnishes the remedy, where it provides:
“Upon the failure of said grantee * * * and if said notice is not complied with without unnecessary delay, said authorities may make or complete the same, and the cost thereof shall be a first lien subject only to existing liens on that portion of said railway covered by this grant, and all costs and expenses of such improvement or repair shall be *132 charged to said grantee and may be collected by action against said grantee then holding said franchise.”
The United States supreme court, in Northern Ohio Traction & Light Co. v. State, ex rel. Pontius, Pros. Atty., 245 U. S., 574, has held that a grant by a county board, without specifying any limit of time, must be held to constitute a perpetual franchise, unless there are controlling provisions in the state constitution or statutes, or prior adjudication by the state’s courts to the contrary.
In urging this case as an authority to maintain the claim that the terms of the franchise do not contemplate forfeiture the expression of the court, “unless there are controlling provisions in the state constitution or statutes,” must not be overlooked.
Our state constitution, Section 2, Article I, provides that:
“No special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly.”
Our legislature has provided in Section 12304 that when a corporation holds by contract, or has exercised a franchise in contravention of law, it is subject to a civil action, in which action the legislature has confided to the courts the determination of such matter; meaning in this case contravention of the law of the contract itself, gleaned from its construction in connection with the facts adduced. And in addition to this, the franchise by its very terms has made all acts of the legislature in any way affecting the operation of a railway upon a public highway a part thereof.
*133 By the constitutional provision the authority for the regulation of franchise rights is thus lodged in the general assembly, and it has provided a method of procedure which makes the question before the court in this case a justiciable one.
The latter claim made by counsel for defendant is no more tenable than the former. Because one remedy is provided in the franchise furnishes no reason for excluding another remedy provided by statute. The public authorities may construct the defendant’s portion of the improvement, and charge the reasonable cost back to the defendant, but this is not an exclusive remedy. The state has the option, and may pursue the course that seems the more desirable.
Authority for this character of action and remedy is furnished rather generally from the various jurisdictions.
In the case of State, ex rel. Atty. Genl., v. Madison Street Ry. Co., 72 Wis., 612, the supreme court of Wisconsin announced the following:
“Under section 1862, R. S., a municipal ordinance granting to a street railway corporation a franchise to occupy and use public streets for the purposes of its railway, has the force and effect of a statute of the state; and for a violation of the provisions of such ordinance an action may be maintained under see. 3241, R. S., to vacate the charter or annul the existence of such corporation.”
To the same effect is State, ex rel. Little, Atty. Genl., v. Regents of University of Kansas, 55 Kans., 389.
*134 The supreme court of Maine, in the case of Reed, Atty. Genl., v. Cumberland & Oxford Canal Corporation, 65 Me., 132, holds the following:
“Information in the nature of a quo warranto, presented by the attorney general, acting ex officio, in behalf of the state, is. the appropriate remedy in the cases of nonfeasance, or malfeasance, abuse of power, or misuse of privilege by a corporation chartered by the state.”
The supreme court of Illinois in the case of People, ex rel. City of Chicago, v. Chicago Telephone Co., 220 Ill., 238, holds as follows:
“ The license or privilege of a telephone company to occupy the streets of a city may be questioned by an information in the nature of quo warranto upon the ground that it has been granted improperly or without warrant of law, or that it is so held or exercised.”
The supreme court of Florida, in State, ex rel. Ellis, Atty. Genl., v. Tampa Water Works Co., 57 Fla., 533, says:
“The policy of the law is to require by mandatory processes the performance by public utility corporations of their duties to'the public; and in proper cases to withdraw by judicial procedure franchises that are being abused.”
In State, ex rel. Kansas City, v. East Fifth St. Ry. Co., 140 Mo., 539, the same principle is recognized.
In the case of New York Electric Lines Co. v. Empire City Subway Co., 59 Law Ed., 184 (235 U. S., 179), the third proposition of the syllabus reads:
‘‘ The acceptance of a permit granted by a municipal corporation under legislative authority to place wires in the city streets creates a contract which can *135 not thereafter constitutionally be revoked or impaired by municipal resolution or ordinance, unless such franchise is lost by misuser or nonuser.”
Nor are we without authority from our own. court. From State, ex rel., v. C., N. O. & T. P. Ry. Co., 47 Ohio St., 130, we quote from the syllabus:
“When a railway company, incorporated under the laws of this state, misuses a franchise, privilege or right conferred upon it, or claims the right to exercise, or has exercised a ‘franchise, privilege or right in contravention of law,’ this court has jurisdiction to inquire into and correct the mischief, though the corporation may be engaged in interstate commerce, and the misuser or usurpation to be corrected relates to and concerns that traffic.”
And in Ohio, ex rel. Richards, Atty. Genl., v. P., C., C. & St. L. Ry. Co., 53 Ohio St., 189, the court holds: “An action in quo warranto will lie against a railroad corporation to contest its claim to exercise a right or privilege to or in the canal lands of the state.”
And to the same effect is State, ex rel. Sheets, Atty. Genl., v. Toledo Home Telephone Co., 72 Ohio St., 60.
While the decisions are voluminous, sustaining this proposition, yet, after all, the statutes of the state hereinbefore mentioned furnish the best answer to the propriety and efficacy of the cause of action and corresponding remedy.
The judgment of the court will therefore be in favor of the plaintiff and against the defendant, and an order will issue ousting the defendant from the continuance of the use of the right of way heretofore and now occupied by it, and located on the east *136 side and running north and south through Section P, Inter-county Highway No. 4, Columbus-Sandusky Road, Main Market Road No. 1, and such order will he entered as of the date of this decision. But in order that no undue hardship may be placed upon the party against whom the order is directed, its operation will be postponed and held in abeyance until the fifteenth day of March, 1922, on and after which, same will become effective, operative, and binding.

Judgment of ouster.

Johnson, Wanamaker, Robinson and Matthias, JJ., concur.
Jones, J., took no part in the consideration or decision of the case.