C. A. GAMBRILL MANUFACTURING COMPANY, Respondent, *v.* AMERICAN FOREIGN BANKING CORPORATION, Defendant, Impleaded with E. R. SHERBURNE COMPANY, Appellant.

First Department, December 17, 1920.

Injunction — suit to restrain payment and receipt of money on letter of credit — sufficiency of affidavit on motion for preliminary injunction — complaint verified by plaintiff's attorney not to be treated as affidavit — preliminary injunction not granted where rights of parties doubtful.

Where in a suit to obtain an injunction to restrain the defendant bank from paying out money on a letter of credit and the defendant corporation from receiving it, the complaint was verified by the attorney for the plaintiff and the affidavit in support of a motion for a preliminary injunction, made by one of plaintiff's attorneys, stated the affiant's conclusions of alleged facts derived from persons, documents and papers

without disclosing the contents of the papers or the information or the substance thereof given to him, the motion should be denied.

On a motion for a preliminary injunction, although personal knowledge of the facts will not always be required where the person having such knowledge is not available, it is incumbent on the affiant for the moving party to set forth the alleged facts imparted to him by the individual having personal knowledge of the facts, and as to written papers on which he relies, they or extracts therefrom should be submitted.

The complaint cannot be treated as an affidavit in support of the motion as it was verified by a member of plaintiff's firm of attorneys and not by the plaintiff.

The plaintiff is not entitled to a preliminary injunction since the motion is based on controverted affidavits and the rights of the parties under the contract in question are open to doubt and uncertainty.

APPEAL by the defendant, E. R. Sherburne Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 24th day of November, 1920, granting plaintiff's motion for a preliminary injunction.

*Godfrey Goldmark* of counsel [*Rosenberg & Ball,* attorneys], for the appellant.

*Leavitt J. Hunt* of counsel [*Robert McLeod Jackson, Ferdinand H. Pease* and *H. Victor Crawford* with him on the brief], *Hunt, Hill & Betts,* attorneys, for the respondent.

GREENBAUM, J.:

The action is brought upon a state of facts quite analogous to those appearing in *Frey & Son, Inc., v. Sherburne Co.* (193 App. Div. 849) and *Gambrill Mfg. Co. v. National City Bank* (194 id. 894), in which this court during the November term, 1920, affirmed orders denying motions for injunctions which were sought to be obtained against the defendant Sherburne Company and the respective defendant banks. The injunction in the instant case was granted by the Special Term after the determination of the appeals just referred to and was limited to the defendant Sherburne Company. It seemed to us unnecessary upon the appeals just mentioned critically to analyze the contracts between the Sherburne Company and the Frey and Gambrill Companies respectively, for the reason that the papers upon which the motions were based were

insufficient to warrant the granting of injunctions against the Sherburne Company.

The complaint in this action alleges an agreement between plaintiff and the Sherburne Company for the sale and delivery to the plaintiff of 1,050 tons of white Java sugars, a copy of which is annexed to the complaint and reads as follows:

"C. A. GAMBRILL MFG. COMPANY, "*April* 26, 1920.

"Baltimore, Md.

"Through: HENRY SLOTHOWER

"GENTLEMEN.— We have this day sold to you for account of E. R. Sherburne Company, against and under their contract with their principals and contingent thereon, about three hundred fifty (350) tons, of 2240 lb. each, white Java sugars, July-August shipment seller's option, at 21½c. net cash duty paid. About three hundred fifty (350) tons, of 2240 lb. each, white Java sugars, August-September shipment, seller's option, at 21c. net cash duty paid. About three hundred fifty (350) tons, of 2240 lb. each, white Java sugars, September-October shipment, seller's option, at 20½c. net cash duty paid. Net cash duty paid, ex-dock New York or ex-store New York, seller's option. Payment to be made net cash upon presentation of delivery order or warehouse receipt against irrevocable letter of credit to be opened by buyer immediately with some New York bank in favor of E. R. Sherburne Company for the full amount of the invoice, said bank to confirm same to E. R. Sherburne Company, 106 Wall Street, New York, immediately.

"Shipment: To be made by steamer or steamers from the Island of Java to New York during the months above specified, seller's option. Free from claims for non-delivery caused by 'force majeure,' fire, explosions, strikes, or by any contingencies beyond control of sellers, preventing the shipment or delivery of the goods. Should any unforeseen circumstances such as accidents, stress of weather, etc. prevent the steamer or steamers hereafter declared against this contract from clearing within the time specified above, and the sellers or their agents be unable to supply other tonnage of equal character and capacity, the buyer has the option of cancelling such portion of this contract as has not cleared within the

time specified above or taking the sugar for later shipment without claiming damages and their decision is to be given immediately on advice from sellers that delay has occurred.

" MINFORD, LEUDER & CO.,

" W. R. BASSETT,

" Accepted: ·                          *Brokers.*

" E. R. SHERBURNE CO.,

" W. R. BASSETT, *Attorney.*"

In the margin of the agreement appears the following: " 5/3/20.   No arrival.   No sale.   H. M. B."

The other allegations of the complaint so far as material to this discussion will now be summarized. It is alleged that the defendant Sherburne Company designated in writing the steamers *Engganno, Tosari* and *Patroclus* against the July-August shipment and the steamers *Washington Maru, Texas Maru* and *Hankow Maru* against the August-September shipment and orally designated the steamer *Veendyk* against the September-October shipment; that the defendant Sherburne Company " evaded and declined " to comply with the demand of plaintiff for information as to when the steamers designated cleared from the island of Java and that it did this " because it did not have contracts for sugar on any of the designated ships and was merely speculating on the market, in derogation of plaintiff's rights to have the vessels designated; " that defendant company had " purchased no sugar in the Island of Java for the purpose of filling its contract * * *, but intends to purchase sugar in New York City and deliver same to plaintiff."

It is also alleged that the " attempt to deliver sugar under the contract herein on any other but the designated vessel constituted a breach of this contract and plaintiff has, accordingly, notified defendant E. R. Sherburne Company that it has canceled the contract, not only in respect to the July/ August shipment, but also in connection with the two shipments to arrive under said contract." It is further alleged, that " the plaintiff, in the case of the August/September shipment where three vessels had been declared against the contract, has no means of knowing, in time to prevent the payment of money under the letter of credit, whether

E. R. Sherburne Company intends to substitute other vessels as no notice of substitution was given in the case of the July / August shipment. That if plaintiff is right in its construction of the contract that vessels must be designated and that this designation is binding, it is entitled to injunctive relief herein in order to prevent the question arising in several actions after the payment of the drafts."

The allegation " that the attempt to deliver sugar under the contract herein on any other but the designated vessel constituted a breach of this contract " is meaningless, since there is no allegation in the complaint that any " attempt to deliver sugar " was made.

Defendant's alleged breach of the contract is thus based upon the failure or refusal of the defendant " to comply with the demands of plaintiff to be informed when the steamers designated cleared from the Island of Java." The alleged reasons which prompted such action on the part of defendant are immaterial if the plaintiff's construction of the agreement as claimed by it is correct.

The complaint is supported by an affidavit made by one of the members of the firm of attorneys of record for the plaintiff. He states as the reason why the affidavit is made by him and not by plaintiff, that plaintiff is a foreign corporation " and that there is no officer of said corporation at present within the city or State of New York " and " that his knowledge and information has been obtained from conversations with plaintiff's officers and officers and agents of the defendant American Foreign Banking Corporation, and a representative of defendant, E. R. Sherburne Company, and also from contracts, letters and other documents actually in possession of deponent." There is, however, nothing in the affidavit to show what the contents of the contracts, letters or other documents were upon which affiant relied, nor are there any extracts therefrom submitted. There is no statement in the affidavit indicating what any of the officers or agents of the plaintiff had stated about the matter. In other words, the allegations are simply the affiant's conclusions of alleged facts derived from persons, documents and papers without disclosing the contents of the papers or the information or the substance thereof given to him, excepting only that he states that " Mr.

H. M. Blinn, secretary of plaintiff company," notified him " that it [referring to the Sherburne Company] takes the position that it has the right to substitute vessels indiscriminately under the contract." There is no evidence that any such indiscriminate substitutions were made. The allegations in the affidavit, which read as follows, are unsupported by any proof: " Deponent alleges on information and belief that the said E. R. Sherburne Company has evaded and declined to give plaintiff " information as to " when the steamers designated cleared from the Island of Java  *  *  *  because it did not have contracts for sugar on any of the designated ships and was merely speculating on the market, in derogation of plaintiff's rights to have the vessels designated." It is well settled that in applications for provisional remedies under the Code, although personal knowledge of facts will not always be required where the person having such knowledge is not available, it is incumbent upon the affiant for the moving party to set forth the alleged facts imparted to him by the individual having the personal knowledge of the facts, and as to written papers, upon which he relies, they or extracts therefrom should be submitted. It is also to be observed that the complaint may not be treated as an affidavit inasmuch as it is verified by a member of the plaintiff's firm of attorneys and not by the plaintiff. It follows, therefore, that all the allegations quoted from the complaint characterizing the defendant Sherburne Company as " speculators " and charging that it had purchased no sugar in the island of Java for the purpose of filling its contract with the plaintiff have no evidentiary force. We might rest here and hold that the complaint is insufficient on its face and that the supporting affidavit is of no probative value. We will, however, review the contract further to indicate the weakness of plaintiff's application for an injunction.

The subject-matter of the agreement was " white Java sugars " which were to be shipped in three lots by steamers from Java to New York during the months of July-August; August-September; September-October. The differences between the parties arose out of the construction to be given to the words " hereafter declared " in the concluding paragraph of the contract.

There is nothing in the agreement which directly or expressly states that the defendant Sherburne Company was obliged to declare any steamer. If any such agreement was intended between the parties it can only be implied from the circumstance that there is a reference in the concluding paragraph of the agreement to steamers " hereafter declared."

A study of that paragraph and particularly of the words " hereafter declared " leads one to conclude that it may be argued that these words imply an intention of the parties that the steamers upon which the goods were to be shipped were at *some time* to be declared by the seller. On the other hand, it is also open to a construction when those words are read in connection with other parts of the contract that they mean " if hereafter declared " or " such shipments as may be hereafter declared," warranting the inference that the seller was not obliged to make a declaration, but that *if* it did make such a declaration it would be subject to the conditions expressed in the concluding paragraph.

As matter of fact the moving papers show that in answer to plaintiff's request for information as to dates of sailing of the steamers, the defendant wrote to the plaintiff that they were " not in the position at the moment to advise you definitely. Please note that we offer these steamer names subject to substitution and correction."

The fact that there is no reference in the contract to any named steamer or steamers upon which the shipments were to be made; that the time of shipment within the months limited was the seller's option; that under the conditions mentioned in the concluding paragraph the sellers were permitted " to supply other tonnage of equal character and capacity;" that the goods were to be paid for as follows: " Net cash duty paid, ex-dock New York or ex-store New York, seller's option," and finally that there is no mention of declaring any ship in the agreement made between the plaintiff and the defendant bank under which the letters of credit were issued, all these circumstances indicate that the parties understood that they had contracted for " white Java sugars " shipped during certain specific months and that any shipment thus made of white Java sugars of equal character and capacity would be a compliance with the contract.

But assuming for the purpose of this discussion that the words " hereafter declared " sufficiently express an intention of the parties that the seller was obliged at some time during the months limited in the contract to declare steamers upon which the various shipments were to be made, it may not, therefore, fairly be argued that the seller was obliged upon plaintiff's demand for information to notify the buyer when a given steamer with a given lot of goods would clear from Java. It was optional with the defendants to clear the ships at any time during the months specified in the agreement, and the most plaintiff would be entitled to is a notification of the clearing date within a reasonable time after the defendant knew it.

The contract doubtless is ambiguous in the respects indicated and open to parol evidence to show the intention of the parties. It is the law *that unless the rights of the parties are clear* the court will not exercise its power to grant an injunction. (*Green Island Ice Company* v. *Norton,* 105 App. Div. 331; affd., 189 N. Y. 529.) It is also well settled that where those rights are clear the court will be ready to prevent a manifest wrong being perpetrated by a party by restraining him from utilizing the instrumentalities or means which work the injury, in order, to use the language of Chief Justice MARSHALL, " to arrest the injury and prevent the wrong. The remedy is more beneficial and complete than the law can give." (*Osborn* v. *United States Bank,* 22 U. S. [9 Wheat.] 845.) The courts have accordingly enjoined holders of securities from fraudulently negotiating them. It depends upon the facts of each case whether the court will or will not grant an injunction.

Where, as here, injunctive relief is asked upon controverted affidavits and upon instruments the construction of which leaves the rights of parties open to doubt and uncertainty, the courts should not grant such relief.

The order appealed from is reversed, with ten dollars costs and disbursements, and the motion for injunction is denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.