NEW YORK STATE RAILWAYS, Plaintiff, *v.* MONROE CAB COR-
PORATION and Others, Defendants.

Supreme Court, Monroe County, July 8, 1929.

*Harris, Beach & Watson,* for the plaintiff.

*Vincent J. Mulvay,* for the defendant Green Cab & Brokerage
Co., Inc.

*Charles B. Bostwick,* for the defendants Monroe Cab Corporation
and others.

KNAPP, J.   An action has been commenced by New York State
Railways, as plaintiff, against the Monroe Cab Corporation and

others, defendants, asking for a judgment of this court that all of the defendants, their officers, agents, servants and employees, and all persons acting in aid of, or in conjunction with them, be permanently and perpetually enjoined from operating taxicabs in the city of Rochester, N. Y., until they have duly complied with all the provisions of law applicable to such operations.

The plaintiff sets forth in its complaint, among other allegations, that it is a railroad corporation duly organized and existing under the laws of the State of New York, and is a common carrier of property and passengers for hire, and that it has obtained the consents and necessary franchises of the local authorities, that it has procured a certificate of public convenience and necessity for the operation of its lines from the Public Service Commission of the State of New York, and that the plaintiff is operating its lines after compliance with all the laws of the State of New York regarding its operations.

It alleges that the defendant Monroe Cab Corporation and the defendant Green Cab & Brokerage Co., Inc., are each domestic corporations and that they are engaged as common carriers of passengers for hire in that they are operating several taxicabs in and about the streets of the city of Rochester, paralleling, in some cases, the lines of the plaintiff and in open competition therewith, and that these defendants are carrying passengers at a rate of fare of fifteen cents for each passenger carried or for a lesser sum, without having procured the consent of the local authorities, and without having obtained from the Public Service Commission a certificate of public convenience and necessity, as provided by section 66 of the Transportation Corporations Law of 1926.

The other defendants in this action are mostly operators of certain taxicabs owned by the Monroe Cab Corporation or the Green Cab & Brokerage Co., Inc.

The complaint makes the usual allegations of irreparable injury, and that it cannot be adequately compensated in an action at law.

Upon the summons and complaint of the plaintiff, together with moving affidavits, the plaintiff has made this application to the court upon an order to show cause asking for a temporary injunction restraining the defendants, their servants and agents, from operating the taxicabs therein referred to or any other taxicabs owned or operated by the defendants, or either of them, upon or along the streets of the city of Rochester, until the defendants have procured the necessary consents from the city, and also a certificate of public convenience and necessity from the Public Service Commission.

While the moving papers allege that the defendants have not

procured the necessary consents of the local authorities for the operation of taxicabs upon the streets of the city, such statements are denied by each of the defendants.

The real question at issue here is as to whether or not the defendants Monroe Cab Corporation and Green Cab & Brokerage Co., Inc., are charging for the carrying of passengers a rate of fifteen cents or less, and thereby bringing themselves within the provisions of the Transportation Corporations Law, requiring a certificate of public convenience and necessity before such taxicabs can be operated upon the streets of the city, and also as to whether or not these defendants are operating their taxicabs as buses, omnibuses or jitneys over a definite and prescribed route in competition with this plaintiff's lines.

Plaintiff is not entitled to this injunction unless the right is plain from the undisputed facts. If the right depends upon an issue which can only be decided upon a trial, an injunction should not be granted. The burden of establishing the undisputed right is upon the plaintiff. (*Pine Hill-Kingston Bus Corp.* v. *Davis*, 225 App. Div. 182.)

The common council of the city of Rochester is authorized by the city charter to regulate, among other things, the operation and speed of all vehicles upon the public streets, highways and places within the city. (Laws of 1907, chap. 755, as amd. by Laws of 1921, chap. 292.)

This provision of the charter empowers the city to determine the extent to which others may do business in and upon its streets. (*Browne* v. *City of New York*, 241 N. Y. 96; *Campbell* v. *Quigley*, 127 Misc. 261.)

I do not think it is open to question now but that the legislative body may properly pass regulations with respect to the operation of motor vehicles offered to the public for hire. (*People* v. *Martin*, 203 App. Div. 423.)

In *People* v. *Rosenheimer* (209 N. Y. 115) the court in the course of its opinion said, " the legislature might prohibit altogether the use of motor vehicles upon the highways or streets of the State."

The power that the Legislature had has been delegated to the city of Rochester by the statute above referred to. The common council of the city has passed ordinances within the city, and has established rates of fare for motor cabs used as auto livery. Such rates of fare, so far as applicable to this question, are as follows:

" For the first third of a mile or fraction thereof, not to exceed Thirty Cents (30¢).

" For each succeeding third of a mile or fraction thereof, not to exceed Ten Cents (10¢).

" For each passenger more than one for the entire trip, each not to exceed Twenty Cents (20¢).

" For each four (4) minutes waiting time, not to exceed Ten Cents (10¢)."

The moving papers do not disclose in what respect these defendants have failed to comply with the ordinances of the city of Rochester. The defendants in their replying affidavits go into the question in some detail setting forth what has been done to comply with the ordinances of the city regarding the operation of their taxicabs.

The defendants have the following schedule of rates for service performed by them in the operation of taxicabs over and along the streets of the city, to wit:

" RATES.

" The rates of the Monroe Cab Corporation. Subject to the Ordinances of the City of Rochester, the following are the rates of fare of the Monroe Cab Corporation of the City of Rochester.

" 1. Point to point two mile circle — 35¢.

" 2. Point to point three mile circle — 45¢.

" 3. Any point to point within the City limits, other than these, but outside of the three mile circle is 45¢ plus 25¢ per mile.

" 4. By the hour, $1.50 within the City limits.

" In no event shall any of the above rates of fare exceed the maximum rate passed by the Ordinances of the City of Rochester, which are as follows:

" 30¢ for first third of a mile.

" 10¢ for each third of a mile thereafter.

" 20¢ for each additional passenger over one for entire trip.

" Each four minutes waiting not to exceed 10¢.

" Rates for auto livery cabs not to exceed 75¢ for each fifteen minutes for one or more persons, with the privilege of going from place to place and stopping and waiting as long and as often as required and permitted.

" For the use of any such auto livery cab by the day, of not more than eight hours, not to exceed $20.00 and for each hour in excess of the eight hours, not to exceed $2.50, and for use of such cab by the week not more than six days, of not more than eight hours each, not to exceed $100.00.

" All of the above rates are for one or four passengers, no extra charge being made for passengers in excess of one or less than five.

" Not more than four passengers are allowed per trip.

" Upon any trip where there is more than one passenger, all the

passengers must ride from point to point. An additional sum of 10¢ per stop will be charged for the stops.

"All rates of fare are from point to point, and separate fares are not to be paid or accepted by drivers where more than one person rides on the same trip, the service being from point to point for one or four passengers.

"The Monroe Cab Corporation allows none of its cabs to cruise. Any person wishing a cab, should call the office, Stone 1160, and in case of emergency, may hail a cab upon the street, but no cab is allowed to pick up passengers while that cab is on call to another party.

"Out of town rates upon request.

"In the event of any question or dispute, call Stone 1180 and ask for the manager."

The question of rates brings us, as has been said before, to the real question involved in this action. From an examination of the rates of the defendants, it will be observed that for a point to point service within the two-mile circle the rate is thirty-five cents, and that that rate applies for the carrying of one or more passengers up to four. The plaintiff contends that this is a violation of section 66 of the Transportation Corporations Law of 1926, in that the defendant is charging for the carrying of passengers in its taxicabs a rate of fare of fifteen cents or less for each passenger within the limits of the city, and in competition with the plaintiff.

The position of the defendants is that they rent a taxicab for a point to point service, charging therefor a definite prescribed sum, as set forth in their schedule of rates; that for such sum they will carry one, two, three or four persons, making the total charge for the point to point service, irrespective of the number of persons carried up to four, and making no definite charge for each person carried.

Mr. Justice BROWN in the case of *Public Service Commission* v. *Hurtgan* (91 Misc. 432) outlines the cases in which a license must be procured from the Public Service Commission, as follows:

"(a) A bus line,

"(b) A stage route,

"(c) A motor vehicle line or route,

"(d) A vehicle in connection with a bus line, a stage route, a motor vehicle line or route,

"(e) A vehicle carrying passengers at a rate of fare of fifteen cents or less for each passenger within the limits of a city,

"(f) A vehicle carrying passengers in competition with another common carrier which is required by law to obtain the consent

of the local authorities of said city to operate over the streets thereof."

Under the above classification the plaintiff claims that the defendants in the operation of their taxicabs fall under subdivisions e and f.

It is not claimed in the moving papers submitted upon this application that the defendants are operating an omnibus, a stage route, a bus line, nor a motor vehicle route, nor that in the operation of the defendants' taxicabs they are paralleling the lines of the railway of the plaintiff, except as may be necessary so to do in the point to point service rendered by the defendants, or either of them. A person having a taxicab of the defendants, or either of them, has a right to the exclusive use of that motor vehicle from the time the contract of hiring is made up to the time that the cab is discharged. If one person desires to be the sole passenger, it is within the privilege of the passenger to ride in the cab at the rates fixed by the defendants to any place within the city of Rochester. If it is within the two-mile circle, such passenger pays for the service rendered the sum of thirty-five cents. At no place from the time of hiring to the time of discharge has any other person any rights to the use of that cab. The right to the exclusive use vests in the passenger. If, perchance, the passenger desires to invite one, two or three to accompany him in the use of the cab from the point of hiring to the point of discharge, the defendants will carry them, and the rate is the same, to wit, within the two-mile circle, the sum of thirty-five cents. The court is unable to agree with the claim of the plaintiff that if this is done it amounts to a charge of eight and three-fourths cents for each passenger, assuming that four occupied the cab, and that the distance was within the two-mile circle. No specific charge in the illustration above quoted is made to the individual passenger in the cab, that he or she pay to the defendant for such service the sum of eight and three-fourths cents for such individual transportation. The charge is made for the use of the cab. It is wholly immaterial whether the four people in the cab make contributions among themselves as to the thirty-five cents to be paid or whether one person pays it entirely. The fact, nevertheless, remains that the defendant, in the illustration cited, is receiving for the use of its cab and the particular service that it renders, the sum of thirty-five cents for the trip, and if that be true, it would seem not to be a violation of section 66 of the Transportation Corporations Law of 1926, and no certificate of public necessity would be required upon that ground alone.

The question also is presented as to whether or not the motor vehicles of the defendants are carrying passengers in competition with the plaintiff. The defendants' cabs are not bound to any street, nor to any set or definite route. In some cases in carrying a passenger from the point of hiring to the point of destination, the route might parallel the tracks of the plaintiff. In other cases such service might be over streets of the city of Rochester in which the plaintiff had no tracks at all, or motor buses. As has been pointed out before, the service rendered by the defendants' cabs is a point to point service from a point of hiring to a point of discharge, and that service includes the whole of the city of Rochester. Under these circumstances it would seem that it cannot be said that the defendants are operating a motor vehicle service in competition with the plaintiff, unless every method of transportation that might take place in the city for the carrying of passengers for hire would be in competition with the plaintiff, and that has never yet been so held by the courts of this State.

Some of the moving affidavits show that taxicabs of the Monroe Cab Corporation were seen soliciting passengers at or near University avenue and Culver Road loop, and the inference to be drawn from these affidavits is that these taxicabs were acting as jitneys in competition with the plaintiff's line. Nothing specific is given in these affidavits as to who the persons were making the solicitation, their names, or the circumstances. The defendants in their affidavits deny that solicitation of passengers has taken place in the city of Rochester, and the owners of the two cab corporations defendants state that no such solicitation is permitted. The moving papers are so indefinite upon this branch of the case that the court is unable to grant a restraining order. If sufficient evidence can be procured showing such solicitation and the carrying of passengers in competition with the plaintiff over a definite route, or other acts violative of section 66 of the Transportation Corporations Law of 1926, a further application may be made restraining the defendants or any of them pending the trial of this action from the commission of such illegal acts.

The motion for an injunction is denied, with ten dollars costs to abide the event.