**DENVER TRAMWAY CORPORATION v. PEOPLE'S CAB CO. OF DENVER, Inc.**

**No. 9914.**

District Court, D. Colorado.

Aug. 31, 1932.

Gerald Hughes, Hughes & Dorsey, W. A. Alexander, Cecil M. Draper, D. Edgar Wilson, and Hodges, Wilson & Rogers, all of Denver, Colo., for plaintiff.

Kenaz Huffman, Frank E. Gove, and Yeaman, Gove & Huffman, all of Denver, Colo., for defendant.

SYMES, District Judge.

This matter has just been heard on complainant's motion for preliminary injunction and taken under advisement. The record now before the court is: The bill of complaint and 45 affidavits in support thereof, defendant's motion to dismiss, supported by 15 affidavits, which put in issue most of the allegations of complainant's affidavits. Briefly, the bill recites that the plaintiff is, and has been for many years, the owner and operator of a street railway system in Denver, occupying the principal streets; that it has an investment of $25,000,000, employs a large number of men, and supplies a necessary and adequate transportation system for the people of the city, consisting mainly of electric street cars, supplemented by a motor bus system, all operating on definite routes; that its service is of vital interest to the business, homes, and properties of the citizens of the city; that for the year 1931 it transported 38,000,000 revenue passengers; and that its franchise rights and properties have been finally and conclusively determined valid; that on the 1st of April of the current year, the defendant, the People's Cab Company, operating as a common carrier for hire, put into operation a fleet of small taxicabs, and solicits business indiscriminately throughout the city; that the defendant has made no investment in its business, and does not own the cabs it operates; that it advertises for, and makes contracts with, the owners of cabs, pursuant to which the owner operates his own cab under the control of the defendant. The

owner pays the defendant $3.50 per day in exchange for an advertising and telephone call service. That defendant operates a central office and telephone exchange, through which it receives calls, and distributes them to the car owners. The latter supplies his own gas and oil, in addition to paying the above fee. The cabs are painted a uniform color, and the owner has to maintain them in good mechanical condition, keep them clean, etc., and assume all liability for damages. It is alleged that it is the purpose of defendant to directly solicit passengers who otherwise would patronize the street cars of the plaintiff, and as a direct result the complainant has suffered a large loss in revenue.

The bill refers to a city Ordinance No. 22, series of 1932, as amended by Ordinance No. 33 of the series, of 1932, enacted and now in full force and effect. It is a comprehensive code, licensing and regulating the operation generally of taxicabs within the city.

It is then alleged that defendant has not complied with the ordinance, operates in violation thereof, and has no right to do business in or use the streets of the city.

It further appears from the bill, and admissions of counsel, that two of the drivers of defendant have been arrested by the city authorities, found guilty of violating this ordinance, and fined. On appeal to the county court, the validity of the ordinance was attacked, and after an extended hearing it was upheld by that court. An appeal to the Supreme Court is now pending. That regardless of such arrest and conviction the defendant is continuing to carry on its operations in total disregard of the ordinance. Next, the bill alleges that such acts constitute a public nuisance, cause traffic congestion, hindering the operation of vehicles lawfully on the street, including complainant's street cars and busses, etc.; that, as a direct result of this unlawful competition, passengers and patrons of the plaintiff's system are diverted in large numbers. The loss of revenue thus occasioned to the plaintiff is depreciating and injuring its investment and property rights, and hinders and affects the service it renders the public.

The prayer is for injunctive relief, an accounting, and a temporary injunction.

The alleged loss of revenue comes under two heads: First, a general and continuing loss in business, due to competition of the defendant's taxicabs, the charges for which are said to be so small as to bring them into direct competition with the trolley cars, and,

secondly, that the defendant's cabs make a practice of driving along the streets occupied by the plaintiff's cars and busses, and directly solicit and pick up passengers waiting for street cars and busses; that at places of public resort, such as Lakeside Amusement Park, etc., the defendant's drivers wait for and solicit members of the public waiting for street cars.

The allegations of direct loss of revenue are supported by the affidavit of W. A. Doty, the secretary and treasurer of complainant corporation. He states that the accumulated deficit in revenue derived from passengers on the Tramway's system shows a very sharp increase, coinciding with the operations of the defendant. To illustrate, he sets forth the following figures: That the accumulated deficit for the month of January, 1932 was 13 per cent., compared with a year ago; for February 8.8 per cent.; for March 10.3 per cent.; for April (the first month of operation of defendant's cabs), 15.72 per cent.; May, 16.69 per cent.; June 18.10 per cent. and July, 21.9 per cent. He concludes his affidavit with the very general conclusion that other businesses and institutions located in Denver show no marked decline in their business during this period of time, and that there was no increase in the general business depression, sufficient at least, to account for this marked decline in the business of complainant, and places the responsibility for this loss directly upon the defendant's operations.

Other affidavits detail instances of passengers picked up on the streets by defendant's cabs while waiting for street cars. Others purport to give the earnings of the defendant's drivers, and allege they are unable to earn a living at the rates charged, and that many of them drive recklessly.

The defendant's motion to dismiss is based solely on many alleged unlawful provisions of the ordinance, sufficient, in the opinion of the defendant, to render the whole invalid. The defendant's affidavits put in issue most of the allegations of complainant's bill and affidavits; that is to say, affirmatively allege its drivers are able to make a living wage; that cruising is not permitted; that is to say, prospective patrons are not directly solicited on the streets; and that it will discharge any driver shown to be guilty of such a practice, and agrees that the so-called "cruising" is forbidden by a valid ordinance.

Its method of doing business is explained, alleges its telephone calls are suf-

ficient to keep all its cabs busy, its business is really a point to point service, so called, and that, if it in fact takes business from the plaintiff, it is nothing more than legitimate competition, of which complainant has no legal or equitable right to complain. An explanation and defense of the so-called zone system is made.

Certain facts material to this discussion—all of which do not appear in the pleadings or affidavits—are admitted and were relied upon by counsel at the hearing. They are: That previous to the enactment of the ordinance in question the defendant company offered to comply in all respects with the ordinance then in full force relative to taxicabs, and tendered the necessary fees to the city, etc. This offer was refused because the municipality did not care to issue any licenses under the then existing ordinance, pending the enactment of the new ordinance; that the defendant has not complied, nor attempted to comply with the same in any manner, insisting that the same is void and of no effect; that the officials of the city refuse to enforce the penal provisions of this ordinance in spite of the fact that its validity has been upheld by the county court on appeal from convictions of two of defendant's drivers in the police court; that the plaintiff and the Denver Cab Company (the latter operating a large fleet of cabs in Denver), had considerable to do with the drafting of this ordinance; and that counsel for these two companies took part in the proceedings in county court. Furthermore, an official of the cab company has filed an affidavit in this proceeding, and its counsel appeared at the hearing, and is of counsel.

First, let us eliminate certain questions raised, preparatory to the discussion of those material to a decision of this motion.

Whether or not the defendant's cabs are driven recklessly, cause congestion in the streets, or operate at a profit or loss either to the drivers or defendant, would seem to be wholly immaterial at this time. This court is not called upon to enforce the penal provisions of a municipal ordinance, even though local officials fail to do their duty in that respect. Furthermore it is settled beyond question that the city has plenary power to say that taxicab rates shall be based on the distance traveled and service rendered, and it may forbid the so-called zone system, and require the use of taximeters exclusively.

The plaintiff occupies the streets of Denver and performs a public service. Its franchises and rights so to do have been upheld by the highest federal courts, and constitute a property right within the protection of the Fourteenth Amendment. Frost v. Corporation Commission of Oklahoma, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483, and no person can lawfully engage in competition with it to its direct injury without authority from the legislature direct, or derived. In the absence of a similar valid grant to others, its rights are exclusive against any person or corporation attempting to operate a similar business without lawful authority, and it may resort to a court of equity to restrain any such illegal operation to the extent that it constitutes an injurious invasion of its property rights. Frost v. Corporation Commission, supra, and cases cited; Denver & R. G. W. Ry. Co. v. Linck et al. (C. C. A.) 56 F. (2d) 957. · Subject to the rule that it "may not resort to a court of equity to restrain a threatened act merely because it is illegal or transcends constitutional powers. They must show that the act complained of will inflict upon them some irreparable injury." United Fuel Gas Co. et al. v. R. R. Commission of Kentucky et al., 278 U. S. 300 at page 310, 49 S. Ct. 150, 152, 73 L. Ed. 390.

· The court cannot protect complainant from lawful competition, nor can the latter complain of new methods of transportation that have a greater appeal to the traveling public. The extent to which taxicabs and street cars come into direct competition is difficult to determine. Street cars and busses run upon fixed routes, while taxicabs are designed for individual transportation, their charges customarily being measured by the distance traveled, as was usual with the old horse-drawn vehicles that they have succeeded. Primarily each occupies a separate field and appeals to a different class of patrons. The aggregate of the transportation services required and usual in a modern city includes both. To the extent that they complement each other, neither can complain in law of loss of business due to resulting competition. Nor is this changed by the fact that the taxicab company offers to do business on a rate schedule below actual cost of the service.

Equity cannot guarantee a street car system against loss of business or competition of taxicabs lawfully operating a point to point service. All the cases here cited, and others I have read, assume that the competitor sought to be enjoined is engaged in the same business—passing for the moment the definition of that term. For instance, in the Frost Case, supra, both parties desired to operate

cotton gins. In Northern Pac. Ry. Co. et al. v. Schoenfeldt et al., 123 Wash. 579, 213 P. 26, the bus company operating in competition with the plaintiff railroad was transporting passengers between the same points that the railroad did; that is, on a regular route between fixed termini. The court stated the rule to be that one engaged in any form of business in defiance of law may be restrained from so doing by anyone suffering special injury.

In the Memphis Street Railway Cases, 133 Tenn. 99, 179 S. W. 635, L. R. A. 1916B, 1143, Ann. Cas. 1917C, 1045, and Id., 138 Tenn. 594, 198 S. W. 890, the jitneys were persistently following the same routes as the street cars and attempting to pick up passengers waiting for street cars, so were restrained. That court observed that injunction would only issue in clear cases.

Likewise in Adam v. New York Trust Co. et al. (C. C. A. 5) 37 F.(2d) 826 (certiorari granted 281 U. S. 715, 50 S. Ct. 460, 74 L. Ed. 1135, denied 282 U. S. 814, 51 S. Ct. 214, 75 L. Ed. 728), the acts complained of were similar to the above. The court stated that the right to protection extended to anyone who could show special damage that differed in kind and degree from the general damage suffered by the community at large.

Some pertinent statements were made in a New Jersey court in Millville Gas Light Co. v. Vineland Light & Power Co., 72 N. J. Eq. 305, 65 A. 504, 506. The dispute was between two gas companies engaged in a like business. After stating the general rule, supra, that any attempted exercise of franchise rights without legislative sanction is a direct invasion of the private property rights of those possessing the lawful franchise, the chancellor said: "The restraining power of a court of equity is only exercised for the protection of rights, the existence of which is clearly established, and so far only as may be essential for the protection of those rights."

And that the franchise owner takes nothing that is not clearly given.

The case from the state of Washington, Puget Sound Traction, Light & Power Co. v. Grassmeyer et al., 102 Wash. 482, 173 P. 504, L. R. A. 1918F, 469 approved in State ex rel. Seattle & R. V. Ry. Co. v. Superior Court, 123 Wash. 116, 212 P. 259, was a statutory action. The jitneys were admittedly doing what the defendant here denies and admits is unlawful; that is, systematically following the street cars, and endeavoring to pick up passengers that would otherwise ride thereon.

In Tulsa St. Ry. Co. v. Oklahoma Union Traction Co., 27 Okl. 339, 113 P. 180, which was a suit by one street car company against another to restrain the latter from constructing and operating without a franchise or authority another street railway system upon the streets of the same city, the court applied the rule to protect the property of the plaintiff from special injury.

An authority on the extent of a proper restraining order is New York State Rys. v. Monroe Cab Corporation et al., 134 Misc. 664, 236 N. Y. S. 6. The court held that a point to point cab service from point of hiring to point of discharge over the whole city of Rochester could not be said to be in competition with the plaintiff street cars, unless every method of transportation that might take place in the city for the carrying of passengers for hire would be in competition with the plaintiff, and that such a holding has never been made by the courts of that state. Also see an interesting discussion of this point in Petition of William B. Gray before the New York Public Service Commission, 2d District, Public Utilities Reports Ann., 1916 A, page 33. In City of Memphis et al. v. Ryals, 133 Tenn. 83, 179 S. W. 631, L. R. A. 1916B, 1151, Ann. Cas. 1917C, 1056, the distinction between taxicabs and "jitneys" is pointed out.

■■■ My present view is that the complainant may not complain of taxicab competition, defining the same as that of "a motor-driven conveyance that performs a service similar to the cab or hackney carriage, held for hire at designated places at a fare proportioned to the length of the trips of the several passengers, who are taken to be carried to destinations without regard to any route adopted, or uniformly conformed to by the operator," but is entitled to protection against the operations of the defendant, in so far as its cabs regularly traverse the public streets between certain definite points or termini, seek patronage along the routes of complainant's cars, or engage in systematic cruising, so called. Such an order will protect the Tramway Company from all special damages resulting from direct competition.

On the record as it now stands I cannot accept the conclusions of the Doty affidavit. The street car system, unfortunately, has been a losing venture for many years, and the very sweeping conclusions he makes are not established. Furthermore, counsel have raised some serious doubts in my mind as to the validity of several of the provisions of the new ordinance. The defendant has put

in issue most of the factual allegations of the moving papers, so a decision of other questions is not now required. If this particular complainant is entitled to press them, they will be considered on final hearing.

The motion to dismiss is overruled and a temporary restraining order may issue to the extent indicated, and defendant will be on notice thereof from this date.

The defendant may have ten days to answer, and it will be understood that the matter will be set for final hearing as promptly as may be.