HARRY LEPLER, Plaintiff, *v.* L. B. PALMER, as Treasurer of the PUBLISHERS ASSOCIATION OF NEW YORK CITY, and Others, Defendants.

Supreme Court, Bronx County, February, 1934.

*Michael Koses [Michael Koses* of counsel], for the plaintiff.

*Morris, Plante & Saxe [Martin Saxe* and *David S. Elkins* of counsel], for the defendant Palmer.

*Walter Kiernan [Walter Kiernan* of counsel], for the defendant Mansfield.

*Isaac Perl [Isaac Perl* of counsel], for the defendant Bachrach.

*Cook, Nathan & Lehman [Emil Goldmark* and *Thomas Epstein* of counsel], for the defendant New York Times Company.

*Jackson, Fuller, Nash & Brophy [Charles B. Brophy* of counsel], for the defendant New York World-Telegram Corporation, sued herein as the New York Telegram Corporation.

*Sackett, Chapman, Brown & Cross [Harold L. Cross* of counsel], for the defendants New York Tribune, Inc., and New York Evening Post, Inc.

*Manheim Rosenzweig [Charles Henry* of counsel], for the defendants New York American, Inc., and New York Evening Journal, Inc.

*DeWitt, Van Aken & Moynihan [Harry H. Van Aken* of counsel], for the defendant Sun Printing and Publishing Association.

*Deiches & Bernson [Maurice Deiches* and *Murray S. Kaplan* of counsel], for the defendant News Syndicate Co., Inc.

*Korkus & Korkus [Edwin F. Korkus* of counsel], for the defendant Metropolitan News Syndicate.

*Edward A. Robertson [Edward A. Robertson* of counsel], for the defendant Daily Mirror, Inc.

COTILLO, J. The plaintiff has instituted this action against one Sam Bachrach, who owns and operates a newspaper and periodical stand at the northeast corner of One Hundred and Fifty-second street and Jackson avenue, Bronx county, and the publishers of

the New York *Times*, New York *World-Telegram*, New York *Tribune*, New York *American*, New York *Evening Post*, New York *Evening Journal*, *The Sun*, *The News*, *The Daily Mirror* and the Brooklyn *Daily Eagle*, papers published and sold in the metropolitan area, L. B. Palmer, as treasurer of the Publishers Association, John C. Mansfield and the Metropolitan News Co., Inc.

In the action, which is based upon the charge that these defendants, in violation of section 340 of the General Business Law, conspired together for the express purpose of preventing the plaintiff from obtaining newspapers, the plaintiff is seeking a judgment compelling the defendant newspapers to supply him with the papers to engage in a retail business to be conducted at the particular place and in the particular manner chosen by the plaintiff.

The court was inclined on the argument to deny the application for a temporary injunction, without writing an opinion. However, upon a reading of the papers, including the complaint, answers of the different defendants and the affidavits of both sides, I am of the opinion that questions of sufficient importance are presented to require a statement of the court's reason for its denial.

The plaintiff is an owner of a certain stationery store and newspaper and periodical stand connected therewith at Nos. 660 Jackson avenue and 727 East One Hundred and Fifty-second street, Bronx county. It is one store having two entrances, one on Jackson avenue and one on One Hundred and Fifty-second street. This store was opened on the 24th of December, 1932. He claims that prior to the opening of the store he notified all the newspaper publishers and distributors of his intention. No objection being heard from the publishers or distributors to the opening of the store, he made deposits for the delivery and supply of newspapers by the defendants Metropolitan News Co., Inc., and the News Syndicate Co., Inc. The plaintiff further claims that on failing to receive any papers he communicated with the defendant Metropolitan News Co., Inc. He was informed that it was endeavoring to obtain permission from the Publishers Association to deliver papers, but that defendant John C. Mansfield, the circulation commissioner of the association, had received a complaint from the defendant Bachrach against the opening of a newsstand in competition with him, and that the association in conformity with their policy of limiting competition, would not grant permission to the Metropolitan News Co., Inc., to deliver papers to the plaintiff. He then claims to have made the rounds of all the defendants, but received no relief.

The defendants not only deny all the allegations of conspiracy,

but point to the fact that they are serving the plaintiff at another store of his located in another neighborhood. They further allege that this is but an attempt on the part of the plaintiff to secure to himself a monopoly of the sale of the so-called "Bulldog" editions of the morning papers, for which he is gouging the public, charging five cents for a two-cent paper and ten cents for a five-cent paper. The defendants allege that before opening the store at the above premises the plaintiff attempted to enter into an agreement with the defendant Bachrach to acquire a monopoly of the sale of the "Bulldog" edition by agreeing to refrain from selling any of the morning or evening papers if Bachrach would refrain from selling the "Bulldog" edition of the morning papers. That issue is the first edition of the morning papers and begins to appear on the newsstands at about nine P. M. on the evening before the actual date stamped on the paper. This claim, which presents a triable issue, would be sufficient to justify the denial of an injunction in this case. (*New York State Rys.* v. *Monroe Cab Corp.*, 134 Misc. 664; *City of Rochester* v. *Rochester Girls' Home*, 194 N. Y. Supp. 236; *Gambri Mfg. Co.* v. *American Foreign Banking Co.*, 194 App. Div. 425.) The refusal of the defendants to countenance an attempt by the plaintiff to gouge the public by increasing the price of papers from the stated price to five cents, in addition to stifling competition, calls for commendation of the defendants rather than condemnation. Newspapers exist not merely for the purpose of supplying the news to the public, but also for the purpose of arousing public opinion against viciousness and racketeering on the part of public officials and those upon whom the public is compelled to rely for the sale and distribution of necessities and luxuries.

Besides this claim of the defendants there is another *real* question involved. That question is the right of a publisher of a newspaper to sell its product to whomever it pleases and to refrain from selling to those it deems undesirable. In my opinion the attitude of the defendants is sound both legally and morally. This position is supported by the decision in *Locker* v. *American Tobacco Co.* (121 App. Div. 443; affd., 195 N. Y. 565). The Appellate Division in handing down its decision held as follows: "The complaint evidently proceeds upon the theory that the plaintiffs are vested with the legal right to buy and deal in the merchandise manufactured and controlled by the defendants, and to be supplied at all times, as the demands of their customers require, upon complying with the conditions attached to the sale of such products, and paying therefor, with such amount thereof, as their business demands, and that a refusal to sell to them is a wrongful and actionable invasion of such right; but we are unable to discover in this record anything warrant-

ing or sustaining such theory. It is the well-settled law of this State that the refusal to maintain trade relations with any individual is an inherent right which every person may exercise lawfully, for reasons he deems sufficient or for no reasons whatever, and it is immaterial whether such refusal is based upon reason or is the result of mere caprice, prejudice or malice. It is a part of the liberty of action which the Constitutions, State and Federal, guarantee to the citizen. It is not within the power of the courts to compel an owner of property to sell or part with his title to it, without his consent and against his wishes to any particular person."

The publication and distribution of newspapers is a private business and the publishers have the right to determine for themselves by whom the papers should be sold. (*Collins* v. *American News Co.*, 34 Misc. 260; affd., 68 App. Div. 639; *Journal of Commerce Pub. Co.* v. *Tribune Co.*, 286 Fed. 111; *Lucomsky* v. *Palmer*, 141 Misc. 278.) Included in this right is the undoubted right to determine for themselves the identity and location of retailers of their newspaper. (*Locker* v. *American Tobacco Co.*, 121 App. Div. 443; affd., 195 N. Y. 565; *People ex rel. Burnham* v. *Flynn*, 49 Misc. 328.)

" A refusal to sell to any particular individual becomes illegal *only* when it is done in pursuance of a combination with other owners to injure the individual with whom they refuse to deal."

In this case upon the affidavits submitted, there is no such combination. This limitation is in strict accord with well-established law governing the right of persons in all kinds of private business to combine for the accomplishment of legitimate ends.

The books are replete with decisions in which the right to newspaper publishers to deal with whom they desire is upheld. To quote from all of them would be merely repetitious. In *Collins* v. *American News Co.* (*supra*) the court laid down the following doctrine: " The plaintiff's counsel argues very earnestly for the liberty of every citizen to conduct his business in his own way, and supports his position by apposite authorities. His doctrine is sound; it is a fundamental constitutional principle of universal application; its operation, also, is mutual and pertains as much to the publishers and their business as to the plaintiff and his business; and the defendants lawfully conducting their business have the right to determine the policy they will pursue therein and the persons with whom they will deal. * * *

" The plaintiff virtually takes the selfish one-sided view that, since his business is lawful, the defendants must aid him in it, so far, at least, as to sell him their papers, even if it be to their own hurt, so long as it is to his profit. There is no view of the case in

which it can be said that the defendants have been guilty of a conspiracy in restraint of trade; nor is there anything like dictation on the part of the publishers as to the manner in which the plaintiff shall conduct his business. They simply say, as they have a right to say, arbitrarily if they choose, that they will not sell their papers to the plaintiff. Doubtless the discontinuance of a supply of papers to the plaintiff will seriously injure him in his business; and, on the other hand, to continue that supply will, to some extent at least, be an injury to the publishers."

The refusal of a manufacturer to sell goods to a wholesale dealer except at the retail price, or to allow commissions or a rebate upon the goods purchased, does not constitute a boycott, where the refusal is based upon the dealer's unwillingness to maintain the selling price fixed by the manufacturer. (*Park & Sons Co.* v. *National Druggists' Assn.*, 175 N. Y. 1.) *A fortiori*, the refusal of the publishers to sell to a dealer because he arbitrarily raises the retail price, cannot be said to be unlawful.

In view of the foregoing, the motion is denied.